554    APPELLATE COURTS OF ILLINOIS.

Strobel Steel Con. Co. v. San. Dis. of Chicago, 160 Ill. App. 554.

## Strobel Steel Construction Company, Appellant, v. Sanitary District of Chicago, Appellee.

### Gen. No. 15,416.

1. CONTRACTS—*when time limit or provision for liquidated damages waived.* Delay by the owner in delivering a site upon which work is to be done either operates to waive the time limit of the contract providing for such work or the clause thereof providing for liquidated damages.

2. CONTRACTS—*what not condition precedent to recovery.* A provision in a contract requiring presentation of claims for extra work to an engineer within a certain time, etc., if not complied with will not bar a recovery, in the absence of the compliance being expressly made a condition precedent to recovery.

3. INSTRUCTIONS—*effect of refusal upon material issue.* If the jury is not properly instructed as to a vital and material issue in the cause a reversal will be awarded.

4. EVIDENCE—*what competent to rebut claim for liquidated damages.* Evidence of conduct of the party claiming liquidated damages to the effect that he furnished indefinite plans and made material changes in the plans after submission, thus contributing to the delay in question, is competent.

5. EVIDENCE—*what competent upon question of damages occasioned by interference with work.* Held, that certain specific questions set forth in the opinion were proper as tending to call for evidence upon the question of damage sustained by interference with the work by the plaintiff.

6. MEASURE OF DAMAGES—*where work has been interfered with.* The rental value of the plant rendered idle by interference, affords a basis for the award of damages.

7. DRAINAGE—*who not authorized to bind sanitary district.* A consulting engineer and a committee of the trustees of a sanitary district in the absence of a showing of express authority to bind, are not authorized to bind such sanitary district to the payment of a money obligation.

Assumpsit. Appeal from the Municipal Court of Chicago; the Hon. WILLIAM N. GEMMILL, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1909. Reversed and remanded. Opinion filed April 7, 1911.

CHARLES T. FARSON and GARDNER, STERN & ANDERSON, for appellant.

JOHN C. WILLIAMS and A. G. ANDERSON, for appellee.

MR. PRESIDING JUSTICE SMITH delivered the opinion of the court.

The plaintiff, Strobel Steel Construction Company, appellant in this court, brought an action in the Municipal Court of Chicago against the Sanitary District of Chicago, appellee, to recover a balance alleged to be due for the construction of a dam known as the "Emergency Butterfly Dam" located in the drainage canal of the Sanitary District of Chicago. The plaintiff claimed a balance due on the contract appearing by the final certificate of the engineers, amounting to $12,915.92, and in addition thereto damages occasioned by various acts of interference of the defendant with the execution of the contract by the plaintiff, thus causing delay and expense to the plaintiff in completing its contract.

The amended declaration contained 24 counts in which the claims and causes of action are set up in various forms, but inasmuch as no question is made as to the sufficiency of the averments to authorize the introduction of evidence in support of the plaintiff's claim, we do not think it necessary to recite the substance of the declaration or any count thereof.

The contract set forth in the declaration under which the dam was constructed was dated July 25, 1906, and by its terms the plaintiff agreed to begin work within fifteen days after the execution of the contract and to complete the main structure of the dam so as to be able to move and close it by March 1, 1907. For a failure on the part of the plaitiff to complete the work on that date, it was agreed that the plaintiff should pay $100 per day as liquidated damages for as many days as the completion should be delayed beyond the time fixed by the contract. Other parts of the dam, including operating machinery, shaft house, etc., on the abutments were required to be completed by June 1, 1907, under a penalty of $25 per day

as liquidated damages for failure to complete the work in the time mentioned by the contract. This latter penalty of $25 per day has been waived by the defendant, and no point was made thereon in the court below or is made here. The defendant claimed, however, that the completion of the dam proper was delayed by the plaintiff until about August 1, 1907, and that the defendant thus became entitled to off-set the liquidated damages or penalty of $12,000 against the plaintiff's claim.

The bid of plaintiff for the construction of the dam was accepted on July 25, 1906, and the contract was awarded to it. The contract was not for a gross sum of money, but was awarded on the principle of "unit prices," so-called, by which the plaintiff was to receive a certain price per cubic yard for the excavation and concreting and a certain price per pound for the steel construction, etc. The exact location of the dam had not been fixed upon and determined at the date of the contract, and it appears from the record that it was not until July 31st, that the exact location of the dam was determined by Mr. Randolph, Chief Engineer of the Sanitary District. When the site was thus fixed upon, a considerable portion of it was still unexcavated and not cleared by the Sanitary District; some of it was still covered by the solid rock which had to be blasted out, and over other portions of it was strewn loose rock, which had been blasted out and not yet removed. The workmen of the Sanitary District were engaged on portions of the site in loading and removing this earth and rock by means of cars run upon tracks laid in the bed of the channel, and afterwards by means of a derrick and tracks upon the banks of the channel.

It appears from the record that although the site was thus fixed and determined upon on July 31, 1906, it was not marked and staked out so that work could be commenced until a later date. Under the contract, it was for the engineers of the Sanitary District to

furnish lines, marks and grades for all parts of the work included in the contract, so that the location of the various parts could be definitely ascertained and determined before work should be started. This was done from time to time after July 31, 1906, as the site was gradually cleared by the Sanitary District. The site of the south pier was staked out on August 24th and that of the center pit on the next day, August 25th. The site of the north pier was cleared and staked out somewhere from October 26th to November 6th and 7th, 1906, although blasting was still going on in the breast rock in close proximity to this pier at this date and for some time afterwards. The site of the east abutment was staked out about November 1, 1906, and that of the west abutment about November 27, 1906. The site of the west abutment was not cleared at the time it was staked out, and the portion of the solid rock which impinged upon this site and also upon the site of the tunnel, under the northwest quadrant, was not removed until early in the month of March, 1907.

As originally planned, a tunnel was to be built underneath the channel, extending from the west shore straight across to the north abutment. This tunnel was to have a shaft at each end, and was large enough for a person to go through for the purpose of communication between the shore and the parts of the dam located in midstream. Shortly after the work was begun it appears that the location of this tunnel was changed, so as to run diagonally from the north pier to the west abutment, and through the site of the west floor.

The removal of the rock at the site of the west abutment and the northwest quadrant was not completed until April 20, 1907. The work of concreting the west floor of the tunnel could not be completed until this rock had been removed and the site cleared. This, it will be noted, was after the date fixed by the contract for its completion, to wit, March 1, 1907; that is to say, that while the plaintiffs were under contract

to complete the entire work by March 1, 1907, a portion of the site, according to the evidence, was not cleared, ready for the work, until a month and twenty days after that date. The work of erecting a steel superstructure necessarily awaited upon and followed the excavation and concreting.

On the trial of the case there was no dispute as to the amount which would be due the plaintiff in case no penalty was assessed for delay under the clause in the contract. It was agreed upon the trial that the amount of the reserved percentage in the hands of the defendant on previous certificates, due and unpaid to the plaintiff, was $3,223.93.

The final estimate of McCartney, Assistant Engineer of the District, dated December 12, 1907, shows a balance due on that date of $6,003.35. In addition to this it was admitted by counsel for the defendant that there was due and unpaid for extra work and material furnished under the contract the sum of $3,688.64, making the total amount due on the contract and for extras $12,915.92. The amount of the verdict was $4,665.95; and inasmuch as the only defense offered in the court below was based upon the clause of the contract providing for liquidated damages of $100 per day, the difference between the amount of the verdict and the amount due to the plaintiff according to the certificates of the engineers and the agreed amount for extras, can only be accounted for by the allowance by the jury of substantially $100 a day for 82½ days to the defendant as liquidated damages.

The errors relied upon by the appellant to reverse the judgment below are errors in rulings on evidence, errors in instructions, and that the verdict and judgment are not supported by the evidence.

The evidence in the record tends to support the facts above stated, and that the plaintiffs were greatly delayed in the delivery to them of the site upon which the emergency dam was to be erected. There was not only delay in delivering the site properly marked and

staked out, but there was some delay in the location of the site of the dam itself, according to the testimony; and after the location was made, there was a change made in the location, and a change made in the course of the tunnel as above indicated.

The evidence shows that the defendant, Sanitary District, continued to occupy part of the site after the time fixed for the plaintiff to commence work, and during the time that the plaintiff was at work upon portions of the site of the dam, and also in connection with the prosecution of its work in completing the Duffy contract immediately adjoining the site of the Butterfly Dam.

The evidence tends to show that this occupation of the site by the defendant and the failure to excavate the channel, and the work being done by the defendant immediately adjoining the site, greatly interfered with plaintiff's work. The plaintiff contends, and we agree with its contenton, that the contract and the work required to be done thereunder was an entirety, and that the date when the plaintiff was to receive the site was the date provided for in the contract when it was to commence the work; and that it did not receive the site under the contract until every part of the site had been cleared of obstructions and the entire location of the dam delivered over to the plaintiff for the performance of its work. In our opinion there was an implied obligation on the part of the defendant to furnish to the plaintiff, within fifteen days from the date of the contract, the entire site of the dam cleared of obstructions upon which to build the dam in question, without interference on the part of the defendant.

We are of the opinion further that the delay of the defendant in locating to the plaintiff the site cleared of all obstructions, for the erection of the dam, and the fact that defendant permitted the plaintiff to proceed with the work after the time fixed for its completion and accepted the work, tends to show that the time limit was either waived altogether, thus giving

560     APPELLATE COURTS OF ILLINOIS.

Strobel Steel Con. Co. v. San. Dis. of Chicago, 160 Ill. App. 554.

the plaintiff a reasonable time to complete the contract, or, that defendant extended the contract time of completion by a period equal to the delay caused by the defendant either in failing to deliver the site or in obstructing the work of the plaintiff after the work had been commenced, and that the defendant thereby waived any and all right to the liquidated damages provided for in the contract for delay on the part of the plaintiff. Taylor v. Renn, 79 Ill. 181; Paddock v. Stout, 121 *id.* 571; Bloomington Hotel Co. v. Garthwait, 227 *id.* 613; Nibbe v. Brauhn, 24 *id.* 268; City of Chicago v. Duffy, 117 Ill. App. 261; Smith v. Sanitary District of Chicago, 108 *id.* 69; Eyster v. Parrott, 83 Ill. 517.

We think it is a necessary inference from the terms of the agreement that the Sanitary District of Chicago undertook to provide the site for the dam in question properly excavated in its channel; and that the failure of the Sanitary District to deliver over the entire site of the dam to the plaintiff for the prosecution of its work under the contract for the length of time as shown by the evidence, resulted in the delay in completing the contract by the plaintiff, and that thereby the provision in the contract for liquidated damages of $100 per day was as effectually eliminated from the contract as if the parties had cancelled it by express agreement. King Bridge Company v. City of St. Louis, 43 Fed. Rep. 768; Mansfield v. N. Y. C. & H. R. R. Co., 102 N. Y. 205.

We do not think that a construction should be given to the contract between the parties to this action which would enable the Sanitary District to retard the prosecution of the work by the plaintiff, or prevent it from employing all the agencies which, in its judgment, could wisely and advantageously be used in the performance of the work called for by the contract, from the date of which the plaintiff was, by the terms of the contract, compelled to commence work, to a much later date, and, nevertheless, enforce the clause providing

for $100 liquidated damages per day for every day after the date fixed by the contract for the completion of the work.   The plainest principles of justice would forbid such a construction of the contract.   It is unreasonable to suppose that the parties intended that the contract should be interpreted in that manner, and that it should be left optional with the Sanitary District to retard the work contemplated by the contract, at its pleasure, discretion or convenience, accept the work, and at the same time enforce the heavy penalty for the non-performance by the plaintiff.   Taylor v. Renn, *supra;* Tobey v. Price, 75 Ill. 645; Marsh v. Kauff, 74 Ill. 189; Sanitary Dist. of Chicago v. McMahon & M. Co., 110 Ill. App. 510; W. H. Stubbings Co. v. World's Col. Exp. Co., 110 *id.* 210.

In our opinion the following refused instruction requested by the plaintiff on this question should have been given:

"The court instructs the jury that if you find from the evidence that the plaintiff did not complete the work covered by the contract on which recovery in this suit is sought, within the time fixed in said contract for its completion, but that after such time for completion had expired said defendant allowed said plaintiff to proceed with said work without raising any question as to delay, or making any claim for liquidated damages therefor, then, as a matter of law, the defendant waived the time of completion of said work fixed in said contract and is not entitled to the liquidated damages provided in said contract to be paid by the plaintiff for delay in completion."

It was error to refuse to give the instruction.   The first and last instructions given for the plaintiff did not fully cover the question.   The jury were not properly instructed as to what in law constituted a waiver of the time limit of the contract for completing the work—a vital and material issue in the case.

It is urged in argument that the trial court committed error in rulings on evidence.

The witness Edward Haupt was asked on direct ex-

amination as to whether it was possible, from an inspection of the plans delivered to plaintiff, to ascertain the location of the dam. This the court erroneously ruled out. The witness stated that he had been in the steel construction business twenty-three years, and had handled plans constantly and made figures on them. He had an engineer's education and was familiar with the plans showing scales. He was further asked what was the function and purpose of a scale of the kind shown on the plans. To this question the court sustained an objection, erroneously, as we think.

An offer was made to show by the witness, from his expert knowledge of the subject, that the scale marked on the plat or plan had nothing to do with the surrounding objects; that it was merely intended to apply to the structure itself, and to this offer of testimony the court sustained an objection. We think that it was error to so rule.

The witness Haupt was asked in regard to changes that were made in the steel work, and what changes were made January 17, 1906. The court sustained objections to the question, erroneously.

An offer was also made to show by the same witness that further changes were made in the plates of the dam on September 17, 1906, which were substantial and material changes. The court ruled out the testimony, erroneously, we think. It was plain, we think, that the changes sought to be shown were material, and that the making of the changes contributed to some extent to the delay in the completion of the contract. Whether they were material changes in the plans and whether the changes caused delay, were questions of fact for the jury. It may be that the changes required extra work and involved the making of new drawings and occasioned much delay, as contended by plaintiff, but the ruling of the court prevented the plaintiff from making the proof material to its cause.

Strobel Steel Con. Co. v. San. Dis. of Chicago, 160 Ill. App. 554.

We think that the court committed error in refusing to allow the witness Fitzpatrick, superintendent of the erection work for the plaintiff, to answer the following question which was propounded to him by counsel:

"Q. I will ask you to state, from the knowledge which you have as an expert, and from the figures that you made at the time, what would have been the actual cost of the labor necessary to complete the superstructure of the Butterfly Dam, in accordance with the plans and specifications in this case, if the site had been delivered to you as an entirety, and you had been able to start the work at all points at once, and had been able to carry on the work free from all interferences by reason of the acts of the Sanitary District?"

To this question the court sustained a general objection. We think this was error.

The same witness was not permitted to answer the question put to him by plaintiff's attorney:

"Q. If the site had been delivered to you as an entirety so that you were able to do all the work at the same time as originally planned, what would have been the cost of the labor necessary to complete the entire structure of the Butterfly Dam?"

This was error.

The witness Haupt was asked the following question:

Q. "Did the delay in the delivery of the site, the fact that you got the site from time to time instead of all at once, and the interference with your work, if any, because of the blasting operations carried on by the Sanitary District, and the progress of that work in close proximity to yours on the site, and the fact that your men had to work under adverse conditions, as recited by you in your previous answer to the previous question, have anything to do with the matter of the cost of completing this contract, or the time of completing it?"

The court sustained a general objection to this question. We think that this was an erroneous ruling.

The same witness was asked by counsel for plaintiff the following question:

"Q.   What was the cost, as figured by you at that time, in accordance with your present experience and knowledge on that subject, and what was the actual cost which would have been incurred for labor, if the dam had been constructed according to the plans and specifications upon a site free from all interference by the Sanitary District?"

The court sustained a general objection to the above question and the witness was not allowed to answer. This, in our opinion, was error.   The interrogatories were directed to the question of damages sustained by the plaintiff, if any, occasioned by the interference with the work by the defendant.

The witness Haupt testified describing the nature of plaintiffs' plant used in the work of steel erection, and that he knew the market rental value of the plant. He was then asked the market rental value per day. The court sustained a general objection to the question. This ruling was erroneous.   There was testimony before the jury which would have warranted them in finding the number of days or parts of days during which the plant was not in use because of acts of interference and hindrance on the part of the defendant.   With the rental value of the plant before them, they would have had a basis for finding the amount of damage sustained by the plaintiff because of such acts of the defendant.   Green v. Mann, 11 Ill. 613; Consumers Ice Co. v. Jenkins, 58 Ill. App. 519; Wood v. State, 66 Md. 61; Griffin v. Colver, 16 N. Y. 489; Sedgwick on Measure of Damages, 6th ed., 81, margin p. 76, note 1.

It is urged that the trial court erred in refusing to admit in evidence the letter or report of Mr. Randolph, dated January 29, 1908, addressed to the Committee on Engineering; and also the report of the Committee on Engineering which accompanied the final certificate of Wisner.   We do not think the letter or report of Mr. Randolph, or the report of the Engineering Com-

mittee recommending that the final certificate be paid, and that all damages be waived, were admissible in evidence against the defendant. Mr. Randolph was then consulting engineer merely, and had no power under the contract to bind the defendant. The committee of the board was also without power to bind the board by its report as far as the record shows. In our opinion the trial court did not err in excluding the papers.

The court gave to the jury instruction No. 8 as follows:

"It is provided in paragraph 3 under the head 'general conditions' of the contract declared on herein that 'all claims for extra labor or materials furnished by the contractor or for damages from any cause whatever, must be reported to the engineer at the time such labor or material is furnished or such damages occur, and they must also be presented to him in writing at the end of the month, provided that nothing shall be paid for as extra work that can be classified under any of the heads upon which prices are fixed by the contract and provided, further, that nothing shall be paid for extra labor or material or for damages unless the same be reported and presented to the engineer as above required.' You are therefore instructed that it was the duty of the plaintiff under said contract to have presented any and all claims for extra labor or material furnished or any damages that may have occurred, if any such have been proved, to the chief engineer in writing at the time such labor or material was furnished or damages occurred, and if you find from the evidence that the plaintiff failed so to do, the jury may take such fact into consideration in determining whether or not plaintiff is entitled to recover anything therefor."

In our opinion this instruction was erroneous, for such a provision, unless expressly made a condition precedent to recovery, does not bar a recovery by the plaintiff, but leaves the defendant to its action for a breach thereof. Birmingham F. I. Co. v. Pulver, 126 Ill. 329, 338; Sanitary Dist. of Chicago v. McMahon &

M. Co., *supra*. The jury were justified in believing from the instruction that the plaintiff could not recover for extras or damages not reported to the engineer at the time.

For the errors indicated the judgment is reversed and the cause is remanded for a new trial.

*Reversed and remanded.*