BENJ. E. SHERMAN & SON, INC., Plaintiff-Appellant, *v.* GILBERT LYNN *et al.,* Defendants-Appellees.

First District (4th Division)    No. 61885

Opinion filed May 12, 1976.

Harold A. Fein, of Chicago, for appellant.

Douglas C. Nohlgren, of Chicago, for appellees.

Mr. JUSTICE DIERINGER delivered the opinion of the court:

The plaintiff, Benj. E. Sherman & Son, Inc., appeals from a judgment of the Circuit Court of Cook County, in favor of the defendants, Gilbert Lynn and Melvin Cowen and others, as co-partners doing business as Alexander Grant & Co., and Alexander Grant & Co., a partnership. The court entered its judgment sitting without a jury on the basis of a stipulated presentation of evidence and oral arguments.

The issues presented for review are whether the judgment was against the manifest weight of the evidence, and whether the plaintiff may raise a claim for *quantum meruit* for the first time on appeal.

Alexander Grant & Co. (Grant), a partnership, leased office space in the Prudential Building in the City of Chicago. The lease ran to 1978 with two five-year options to extend it to 1983 and 1988. The terms of the lease provided Grant could not sublease the space, but this was understood to mean that subletting was possible only if Prudential specifically consented to the proposed sublease.

Grant determined it no longer needed its fifth-floor space, and initiated

discussions with Prudential about a possible cancellation of the lease. When these discussions proved fruitless, Grant designated Gilbert Lynn as the partner to sublease that space.

On December 15, 1970, Lynn retained the real estate firm of Strobeck, Reiss & Co. (Strobeck) to sublease the unwanted premises. Strobeck was represented throughout the proceedings by its employee, William Buchbinder. The agreement between Grant and Strobeck provided Strobeck would be paid the customary commission if it subleased the space solely through its own efforts, and it would be paid one-half the customary commission if it procured a sublease through the efforts of a cooperating broker. In the latter case Grant agreed to pay a full commission to the cooperating broker.

The agreement further provided for the payment of a commission only upon the execution, delivery, and acceptance of a written sublease. Form language, which would have provided for a commission upon Prudential's cancellation, was struck out.

Merit Insurance Company was interested in acquiring office space and retained the firm of Benj. E. Sherman & Son, Inc. (Sherman) for that purpose. On Friday, May 21, 1971, Buchbinder received an inquiry about office space in the Prudential Building from Arthur Kaplan, a broker with Sherman. During this discussion, Kaplan asked Buchbinder whether an insurance company would be acceptable as a sublessee. Buchbinder spoke to the manager of the Prudential Building, Michael Sylvester, who informed him Prudential had no policy of automatically excluding insurance companies. He stated Prudential might look favorably on a sublease application for a casualty insurance company which would not be competitive in the life insurance business. Buchbinder relayed the message to Kaplan.

On Sunday, May 23, 1971, Strobeck published a classified advertisement in the Chicago Tribune, offering any cooperating broker a full commission in conjunction with the space in the Prudential Building. On the following day Buchbinder met with Kaplan and provided him with pertinent portions of the existing lease. Kaplan understood Prudential's consent was a necessary condition to any sublease.

The officers of Grant and Merit reached an oral agreement on the terms of a sublease acceptable to each of them on Friday, June 4, 1971, and Lynn sent a letter to Sylvester requesting Prudential's approval. The sublease agreement was to be effective September 1, 1971, and was to extend to 1978, as Grant hoped to use the space for its own expansion after that date. The proposed rent was for an amount less than called for in Grant's lease with Prudential.

Either on the same day or on the following Monday, Sylvester told Lynn, Prudential had decided to use the space for its own purposes, and

would cancel Grant's lease effective August 1, 1971. Grant then accepted Prudential's proposal to terminate the lease. Although Grant had the legal ability to reject the proposal to cancel the lease, its full monthly liability on the lease would have continued.

Lynn stated he discussed with Prudential the possible termination of the lease in March of 1971 after the listing with Strobeck, but he did not remember the date of the last discussion prior to June 7.

On June 21, 1971, Strobeck submitted to Grant a bill for $10,000. The bill stated it was for negotiating a lease termination. Buchbinder stated Strobeck did not actually participate in the cancellation discussions, but it felt the Merit negotiation was a precipitant to Prudential making up its mind with regard to the cancellation, and it had spent many hundreds of hours on the disposition of the space and was entitled to some compensation. He stated Grant had a moral, but not a legal obligation to pay the bill. A memorandum from a partner of Grant to the Grant national office suggested Strobeck be paid approximately one month's rent ($5500) for its efforts in securing prospective sublessees.

Buchbinder testified Strobeck had no obligation to Sherman because it is the common practice between brokers that there is no commission unless there is a fully executed and effective document.

The parties stipulated if Prudential had agreed to the Merit sublease, Grant and Merit would have executed the sublease. It was further stipulated if the sublease had been executed, Grant would have been obliged to pay Sherman a broker's commission of $10,592.52, and Strobeck a commission of $5,296.27.

The court concluded the plaintiff had procured a potential sublessee who was ready, willing and able, except the necessary consent of the Prudential Building was not obtained. The court also found there was no evidence Grant or its agent acted in bad faith in any manner such that it was estopped from asserting the fact that the Prudential Building refused to consent to the proposed sublease arrangement.

The plaintiff first contends the defendants should be estopped from asserting Prudential's refusal to approve the sublease was a bar to the plaintiff's right to the agreed commission of $10,592.52. The plaintiff argues it detrimentally relied on Grant's representation that an insurance company would be acceptable, and without such a representation negotiations would not have been commenced and concluded. The plaintiff further argues it detrimentally relied on Grant's "seemingly open conduct" in the negotiations, when Grant never intended the sublease to go through, and simultaneously carried on secret negotiations for the lease cancellation which made the sublease impossible. The plaintiff suggests Grant was using the Merit negotiations to gain leverage with Prudential to accomplish cancellation of the lease.

As a basis for these arguments the plaintiff states nowhere in the stipulation does it appear the lease cancellation negotiations were disclosed to Kaplan or Merit. The plaintiff further states Grant's insistence on the deletion of the clause in the exclusive brokerage agreement with Strobeck strongly implies the lease termination was its paramount objective because the sublease was for an amount less than that called for in Grant's lease.

A review of the stipulation shows at the outset of the proceedings, Merit was informed any sublease negotiated by Grant must have the approval of Prudential. All parties knew consent was one of Grant's conditions which Sherman had to satisfy in a successful candidate. Merit was also informed of Prudential's statement it would not necessarily exclude another insurance company and might look with favor upon a casualty insurance company which was not competitive in the life insurance field. There was no representation by Grant that Prudential would give its approval to the sublease.

■■ There is nothing in the stipulation to show Grant's negotiations with Merit were a sham. Prudential could refuse any Grant Proposals for either a sublease or a cancellation and was not subject to leverage by Grant. When Prudential refused to consent to the sublease, Grant had no economic choice but to consent. The parties did stipulate, however, if Prudential had agreed to the sublease, Grant would have executed it, and Kaplan quoted the Prudential Building manager as stating, "We rejected the deal." We agree with the express conclusion of the trial court that there was no evidence of bad faith on the part of Grant or its agent, Strobeck.

■■ Second, the plaintiff contends for the first time it should receive an award of the stipulated amount on the basis of *quantum meruit* because its efforts at producing a sublessee led to a cancellation of the lease. The plaintiff argues to do otherwise permits Grant to be unjustly enriched from Kaplan's efforts.

It is well settled issues not presented at trial will not be heard for the first time on review. *(Kravis v. Smith Marine, Inc.* (1975), 60 Ill. 2d 141; *Mrzlak v. Ettinger* (1975), 25 Ill. App. 3d 706.) In this case the plaintiff did not assert the *quantum meruit* theory at trial and may not do so in this court.

For these reasons, the judgment of the Circuit Court of Cook County is affirmed.

Affirmed.

JOHNSON, P. J., and BURMAN, J., concur.