PATHMAN CONSTRUCTION CO., Plaintiff and Counterdefendant-Appellee,
v. HI-WAY ELECTRIC CO., Defendant and Counterplaintiff-Appellant.—(THE
HOME INDEMNITY COMPANY, Counterdefendant-Appellee.)

First District (4th Division)    No. 76-776

Opinion filed October 12, 1978.

Vihon, Fuchs, Temple & Berman, Ltd., and Edward R. Nathanson, both of Chicago (Robert F. Fuchs, Harvey Berman, and John Roselli, of counsel), for appellant.

Hoffman & Davis, of Chicago (Sol A. Hoffman and Alvin L. Kruse, of counsel), for appellees.

Mr. JUSTICE LINN delivered the opinion of the court:

This is an action for damages sustained by plaintiff, Pathman Construction Co. (Pathman), allegedly due to the delay of defendant, Hi-way Electric Co. (Hi-way), in performing its work under an electrical subcontract agreement. After a bench trial in the circuit court of Cook County, the trial court entered judgment for plaintiff in the amount of $92,583.93. In a supplemental order the trial court set off this judgment against a judgment previously obtained by Hi-way against Pathman in the United States District Court for the Eastern District of Michigan which Hi-way had registered pursuant to statute. (Ill. Rev. Stat. (1975), ch. 77, pars. 88 through 105.) Hi-way appeals from the trial court's opinion and both final and supplemental orders.

The following issues are raised on appeal: (1) whether Pathman failed to plead and prove the necessary elements of its case; (2) whether the trial court erred in apportioning the damages for delay; (3) whether the trial

court erred in failing to credit Hi-way with an extension granted on the prime contract; (4) whether the trial court's findings are against the manifest weight of the evidence; (5) whether the damages are supported by substantial evidence; (6) whether the trial court erred in refusing to admit certain testimony as judicial admissions against Pathman; and, (7) whether the trial court lacked authority to enter the supplemental order.

We affirm the decision of the trial court.

In 1967, the General Services Administration (GSA) entered into a contract with Pathman as prime contractor for the construction of a Federal office facility in Evansville, Indiana. Hi-way was Pathman's subcontractor for all the electrical work on the project under a subcontract agreement dated March 27, 1967. The portions of the subcontract which are relevant to this action state:

"6. The Sub-contractor agrees to prosecute said work with due diligence, without delay, and will not in any manner, by delay or otherwise, interfere with the work of the Contractor or other Sub-contractors, and should the said Contractor conclude that the said Sub-contractor is delaying said work, he shall so notify said Sub-contractor, who shall within forty-eight (48) hours thereafter, furnish whatever materials are required by said Contractor, and employ additional men, working two shifts if necessary, as required by said Contractor, and in case Sub-contractor fails to comply with said demand, the said Contractor shall have the right to furnish said materials and employ said additional men and charge the expense thereof against the said Sub-contractor and deduct same from monies due or to become due on this contract, or the Contractor may, at his discretion, cancel the contract with the Sub-contractor and let the balance of the work to another contractor, on a flat contract basis, it being understood and agreed that should the new contract for the balance of the work exceed the amount of the balance due the Sub-contractor, said Sub-contractor agrees to pay whatever excess cost has been incurred by the Contractor, due to such action. In the event it becomes necessary for the Contractor to collect any deficiency from the Sub-contractor by legal action, the Sub-contractor agrees to defray all legal and court expenses in connection with such action.

\* \* \*

13. The Sub-contractor shall immediately upon the signing of this contract, prepare and submit to the Contractor, all shop drawings necessary \* \* \* in connection with this work. \* \* \* No allowance for time will be made Sub-contractor for delay in preparing his drawings or in securing approval of same when such drawings are not properly prepared for approval of Owner.

14. It is expressly UNDERSTOOD AND AGREED by and between the parties hereto that time is and shall be considered the essence of the contract on the part of said Sub-contractor, and in the event that the Sub-contractor shall fail in the performance of the entire work to be performed under this contract, by and at the time or times herein mentioned or referred to, the said Sub-contractor shall pay unto the said Contractor, as damages, all such actual damages or liquidated damages suffered by the Contractor by reason of such default; and the said Contractor shall have the right to deduct from any moneys otherwise due or to become due to the said Sub-contractor, or to sue for and recover compensation or damages for the non-performance of this contract at the time or times herein stipulated or provided for.

15. The Sub-contractor knows that the Contractor must have his contract performed on or before the 1 August day of 1968; and it is therefore understood and agreed that the work provided for herein shall be entirely completed on or before ＿＿＿＿＿＿ and to that end the Sub-contractor will perform not less than the following average amount of work in accordance with the Critical Path Schedule and as directed by the contractor.

* * *

17. When extension of time for strikes, fire casualties or for any other reason beyond its control has been granted Contractor by Architect or Owner, the same extension shall be granted said Sub-contractor, it being expressly agreed, however, that the Contractor shall not be liable to the Sub-contractor for any such delays or for any other reason whether caused by the Contractor or its other Sub-contractors, the Owner or other independent contractors of the Owner."

The critical path (CPM) schedule referred to in paragraph 15 of the subcontract, was prepared by a professional construction analyst subcontracted by Pathman. By using a computer program, the analyst organized the various construction phases in sequence and assigned a certain period of time to each phase in an effort to insure completion of the entire project by the finish date required under Pathman's prime contract with GSA. The CPM schedule was revised periodically to reflect extensions granted to Pathman by GSA.

The judgment appealed from is for damages incurred by Pathman as a result of delays in Hi-way's performance under the electrical subcontract. The first serious problem relating to Hi-way's progress involved its late submission of the shop drawings and material lists required under

paragraph 13 of the subcontract. Hi-way originally submitted shop drawings to Pathman for GSA approval on May 10, 1967. Because these shop drawings were not accompanied by the required material lists, the drawings were not approved by GSA until October 23, 1967. This delay was the subject of extensive correspondence between the parties and GSA from May until November 1967.

While the parties were attempting to resolve the shop drawing dispute, construction began on the project. A general labor strike occurred in April 1967, for which GSA subsequently granted Pathman a 24-day extension for completion of its performance on the prime contract. A revised CPM schedule, dated June 3, 1967, was prepared to reflect this extension. This revised schedule was employed by the trial court as a general guide to determine when Hi-way's performance was due under the subcontract.

Hi-way was required to install header duct, hollow tubing through which electrical conduit is run, upon the cellular decks installed under Pathman's supervision. Hi-way was to begin installation of header duct on the second floor of the main structure immediately after the cellular deck had been completed, and then proceed to install the third floor duct after the deck work had been completed on that floor. Work on the cellular deck began on September 18, 1967. The second floor was completed on September 29, 1967. Since Hi-way had not at that time obtained approval of its shop drawings it could not begin the header duct installation; however, the June 3, 1967, CPM schedule did not call for the installation of header duct to begin until November 9, 1967. The entire cellular decking job was not completed until October 5, 1967. Hi-way actually began installation of header duct on December 6, 1967, and did not complete this phase of the project until December 28, 1967.

During the fall of 1967 a steelhaulers' strike occurred for which GSA granted Pathman a 20-day extension on the contract. This strike apparently did not interfere with Hi-way's part of the project. Delays in completing the header duct installation delayed the pouring of concrete over the decking and forced Pathman to winterize the structure at additional expense to permit the concrete work to proceed during the cold weather.

The second phase of the project for which damages were sought against Hi-way included the installation of ceiling light fixtures. According to the CPM schedule, installation of the light fixtures was to be completed three days after the installation of the suspended ceiling grid system. The ceiling grid system was completed on February 13, 1969. The evidence showed that the light fixtures were not completed until March 14, 1969.

The entire project was accepted by GSA on July 7, 1969. GSA withheld $50,000 from its final remittance to Pathman as liquidated damages for the 122 days the entire project had been delayed.

On March 24, 1972, Pathman filed this action to recover damages attributable to Hi-way's alleged delay in performing under the subcontract. Hi-way answered and counterclaimed, demanding a setoff in the amount of $56,711.18 for extra work performed and damages allegedly sustained due to Pathman's failure to properly supervise the project.

While action on Pathman's complaint and Hi-way's counterclaim was still pending, Hi-way instituted a registration proceeding in the circuit court of Cook County in an effort to collect a judgment it had obtained against Pathman and Home Indemnity Company in the United States District Court for the Eastern District of Michigan. The Federal case involved a separate project on which Hi-way had served as a subcontractor of Pathman. The Federal judgment was registered and that case was consolidated with the pending damage action before the consolidated cases were set for trial.

After hearing all the evidence and considering other factors which had contributed to the overall delay on the Federal office facility project, the trial court found that Hi-way was responsible for delaying the installation of header duct 49 of the 69 days alleged by Pathman. With regard to the light fixtures, the court found that Hi-way was responsible for 29 days of the 45-day delay claimed by Pathman. However, as a total figure, the court held Hi-way responsible for only 74 days of the entire 122 days the project had been delayed. In calculating damages, the trial court held Hi-way liable to Pathman for $110,000 or seventy-four one-hundred-twenty-seconds of the $170,312 in total damages claimed by Pathman. The trial court dismissed Hi-way's counterclaim for negligent supervision but awarded Hi-way $17,446.07 on its counterclaim for extra work performed on the project. Accordingly, on May 24, 1976, the trial court entered a judgment in favor of Pathman for the net amount of $92,553.93.

On June 3, 1976, the trial court entered a supplemental order providing that the registered judgment in favor of Hi-way for $63,802.55 and the judgment entered on May 24 in favor of Pathman were to be set off against each other, thus, fully satisfying the registered judgment in favor of Hi-way and leaving an unsatisfied balance of $28,751.38 on Pathman's judgment against Hi-way.

Hi-way appeals from the original judgment order of May 24, 1976, and from the supplemental order entered on June 3, 1976.

OPINION

I

■■■ We note that for the first time on appeal Hi-way raises the issue of Pathman's failure to plead and prove compliance with the notice provision contained in paragraph 6 of the subcontract. Although in an action for breach of contract it is necessary for the plaintiff to plead and

prove that he has performed all conditions precedent to the contract (Ill. Rev. Stat. 1975, ch. 110A, par. 133(c); *George F. Mueller & Sons, Inc. v. Northern Illinois Gas Co.* (1975), 32 Ill. App. 3d 249, 336 N.E.2d 185), an objection which is not preserved in the trial court cannot be raised for the first time on review (*Kravis v. Smith Marine, Inc.* (1975), 60 Ill. 2d 141, 324 N.E.2d 417; *Benj. E. Sherman & Son, Inc. v. Lynn* (1976), 38 Ill. App. 3d 569, 348 N.E.2d 191). Only where a complaint, with all the intendments in its favor, wholly and absolutely fails to state a cause of action at all, can an objection be made to it for the first time on appeal. (*Village of Hillside v. Chicago, Aurora & Elgin R.R. Corp.* (1976), 40 Ill. App. 3d 861, 353 N.E.2d 227.) Where a complaint substantially but imperfectly alleges a cause of action, defendant waives any defect by answering it without objection and proceeding to trial (*County of Winnebago v. Willsey* (1970), 122 Ill. App. 2d 149, 258 N.E.2d 138), particularly where the defect could have been remedied by amendment (*Third Swansea Properties, Inc. v. Ockerlund Construction Co.* (1976), 41 Ill. App. 3d 894, 354 N.E.2d 148). Failure to plead the performance of all preconditions in an action for damages for delay in the performance of a construction contract falls within the general concept of waiver and is not a fatal defect which can be raised for the first time on appeal.

Upon careful review of the pleadings, we find that neither Hi-way's answer nor its motion to dismiss at the end of the plaintiff's case raised an objection to the sufficiency of the cause of action on the ground that Pathman had failed to plead or prove compliance with the notice provision. The transcript of proceedings in the trial court does not contain a single reference to this specific objection. A general objection to the sufficiency of the complaint or the proofs, as contained in Hi-way's answer and motion for directed verdict, is insufficient to advise the trial court of the nature of the objection and does not serve to preserve a more specific objection for review. *Dixon v. Industrial Com.* (1975), 60 Ill. 2d 126, 324 N.E.2d 393.

Even if Hi-way had raised this objection in a timely fashion it could not have been sustained. The standard subcontract agreement between Pathman and Hi-way provides the contractor alternative methods of recovery. Paragraph 6 provides for the remedy of termination of the contract in the event of a delay in performance by Hi-way, and conditions Pathman's right to terminate the contract upon the giving of 48-hour notice. Paragraph 14 provides the alternative remedy of permitting the subcontractor to continue to perform and allows Pathman to recover damages for its delay. Similar provisions have been construed to provide separate, alternative remedies. (*Clarke Const. Co. v. United States* (7th Cir. 1923), 290 F. 192.) Since Pathman elected to seek recovery as provided in paragraph 14, the 48-hour notice provision does not apply.

## II

Relying on *Jefferson Hotel Co. v. Brumbaugh* (4th Cir. 1909), 168 F. 867, Hi-way argues that because Pathman and other contractors under Pathman's control were partially responsible for delaying the completion of the project, the court cannot as a matter of law allocate part of the damages for delay to Hi-way. In *Jefferson Hotel* a contractor sued the owner of the property for the balance due on a construction contract and for an amount for extra work performed. The owner attempted to defeat the contractor's recovery by asserting its right to liquidated damages for the contractor's delay in completing the project. The court denied the owner's claim under the liquidated damage provision and, finding that both the owner and the contractor were responsible for delaying the project, refused to apportion the delays between the parties.

The principle articulated in *Jefferson Hotel* was explained in *Acme Process Equipment Co. v. United States* (U.S. Ct. Cl. 1965), 347 F.2d 509, *rev'd on other grounds* (1966), 385 U.S. 138, 17 L. Ed. 2d 249, 87 S. Ct. 350, which also involved the denial of liquidated damages upon a finding of mutual delay. In *Acme* the court stated:

> " '[W]here delays are caused by both parties to the contract the court will not attempt to apportion them, but will simply hold that the provisions of the contract with reference to liquidated damages will be annulled.' *Schmoll v. United States*, 91 Ct. Cl. 1, 28 (1940). See, also, *United States v. United Eng'r & Contracting Co.*, 234 U.S. 236, 242, 34 S. Ct. 843, 58 L. Ed. 1294 (1914); *Vogt Bros. Mfg. Co. v. United States*, 160 Ct. Cl. 687, 709 (1963); *Commerce Intern. Co. v. United States*, Ct. Cl., 338 F.2d 81, 90, decided Oct. 16, 1964. That result is fair. *It does not deprive the Government of an opportunity to prove and recover its actual damages caused by the contractor's delay; instead, the defendant merely loses its right to insist on an artificial measure of damages agreed on by the parties for the situation in which the contractor alone is responsible for the delay.*" (Emphasis added.) 347 F.2d 509, 535.

It is elementary that damages must be proven with reasonable certainty to assure a fair and just result. In holding that a court will not indulge in speculation to allocate liquidated damages according to the relative delay caused by the parties, the courts in *Jefferson Hotel* and *Acme* reiterated this basic principle of contract law. (See also *Gamm Construction Co. v. Townsend* (1975), 32 Ill. App. 3d 848, 336 N.E.2d 592; *Strobel Steel Construction Co. v. Sanitary District* (1911), 160 Ill. App. 554.) The instant case must be distinguished from those cases because here Pathman is seeking to recover actual damages, only a small portion of which can be attributed to the liquidated damages which GSA withheld from Pathman.

Hi-way also relies on the statements of the court in *Walsh v. North American Cold Storage Co.* (1913), 260 Ill. 322, 103 N.E. 185. There contractors sought to enforce mechanics liens against the property of the owner for the balance due under a construction contract. The owner claimed that it had sustained damages by reason of the contractor's delay in completing the work, in excess of the balance due under the contract. From a decision for the contractors, the owner appealed. The reviewing court held that the evidence supported a finding that the contractors had not been responsible for delaying completion of the project. In discussing the damages for delay issue the court stated:

> "It was incumbent upon plaintiff in error to prove by competent evidence, with reasonable certainty, that it was damaged and the amount of the damage. We are of opinion the proof on this question was too uncertain and speculative in character to furnish a proper basis for the assessment of damages. Furthermore, it was not shown what part of the damages claimed was attributable to the delay of Walsh & Masterson and what proportion of them to the bridge company. They were, of course, not jointly liable for all the damages claimed, and to justify awarding damages against them it should be shown with some degree of accuracy that damages had been caused, and the amount caused by each of the parties, respectively. Counsel for plaintiff in error in their brief say the damages should be apportioned by ascertaining the fraction of the total delay that each contractor was responsible for, and such fraction will be the measure of his liability. We cannot adopt the suggestion. *The proof furnishes no reasonable basis upon which a court could apportion the damages between Walsh & Masterson and the bridge company, even if it established plaintiff in error had sustained damages, as claimed.*" (Emphasis added.) 260 Ill. 322, 327-28, 103 N.E. 185, 187.

■ Our reading of this case supports the proposition that the issue of apportioning damages in a case of mutual delay is a question of fact. (See, *e.g., Robinson v. United States* (1923), 261 U.S. 486, 67 L. Ed. 760, 43 S. Ct. 420; *Carter Electric Co. v. Travelers Indemnity Co.* (10th Cir. 1967), 382 F.2d 567; *J.D. Hedin Construction Co. v. United States* (U.S. Ct. Cl. 1965), 347 F.2d 235; *Bedford-Carthage Stone Co. v. Ramey* (Tex. Civ. App. 1930), 34 S.W.2d 387.) The burden of proof is on the party claiming such damages to prove the damages were caused by default of the party to be charged, separate from any damages that may have resulted from the acts of the claimant. (*Edward Edinger Co. v. Willis* (1931), 260 Ill. App. 106.) The amount of delay attributable to each party is a question which must be resolved by the trier of fact.

■■ ■ Where there is sufficient evidence to allow the court to make a reasonably certain division of responsibility for delay, the assessment of damages may be allocated among several parties. Although the task is particularly difficult when, as here, the performance of the work is sequential and the delay is the result of multiple causes, it is not impossible. We note that technological advances and the use of computers to devise work schedules and chart progress on a particular project have facilitated the court's ability to allocate damages. Although the record does reveal incidents of delay occasioned by Pathman or other subcontractors under its control we do not believe the able and experienced trial court erred in apportioning the damages to arrive at Hi-way's aliquot share.

III

Hi-way argues that in assessing damages for delay the trial court failed to credit Hi-way with an extension for completion of the project granted to Pathman by GSA. During the term of the project two extensions were granted by GSA to Pathman as a result of labor strikes. No question is raised regarding the first extension for which Hi-way was given credit by the trial court. In issue is a second, 20-day extension granted Pathman by GSA as the result of a steelhaulers' strike which occurred in August, September and October of 1967. This extension was not reflected in the June 3, 1967, CPM schedule upon which the trial court relied in calculating damages.

Paragraph 17 of the subcontract states, in part: "When extension of time for strikes, fire casualties or for any other reason beyond its control has been granted Contractor by Architect or Owner, the same extension shall be granted said Subcontractor * * *." Relying on this provision, Hi-way contends any extension given to Pathman by GSA for the enumerated reasons, although unrelated to Hi-way's performance, should be deducted from the period of time for which damages for delay are assessed. We do not agree. A similar contention was rejected in *Carter Electric Co. v. Travelers Indemnity Co.* (10th Cir. 1967), 382 F.2d 567, where the court held that a government extension on the primary contract did not automatically inure to the benefit of a subcontractor even though the subcontract incorporated the prime contract by reference.

■■ It is obvious this provision was intended by the parties to extend Hi-way's completion date if its performance was delayed by the same unforeseen event for which the government extension had been granted to Pathman. To grant an extension of time which was in no way related to the subcontractor's performance would be meaningless. Here the trial court found that the steelhaulers' strike did not delay Hi-way's work on

the project and that the extension granted to compensate for the strike was totally unrelated to Hi-way's performance. Hi-way has failed to point to any fact which would render that finding against the manifest weight of the evidence. Accordingly, we find that the trial court properly excluded this extension from consideration when computing damages for delay.

## IV

We now turn to the principle issues on appeal—whether the trial court's decision and award of damages are supported by substantial competent evidence. The same general rule governs the disposition of both of these issues. A reviewing court will not disturb a trial court's finding and substitute its own opinion unless the holding of the trial court is manifestly against the weight of the evidence. (*Schulenburg v. Signatrol, Inc.* (1967), 37 Ill. 2d 352, 226 N.E.2d 624; *Gaffney v. McCarron* (1977), 45 Ill. App. 3d 944, 360 N.E.2d 508.) This rule is also applicable to the assessment of damages. (*Schatz v. Abbott Laboratories, Inc.* (1972), 51 Ill. 2d 143, 281 N.E.2d 323.) Since we cannot say that either the trial court's decision or determination of damages is against the manifest weight of the evidence, we must affirm the judgment.

## A.

Hi-way makes extensive reference to the on-site inspection reports prepared by the same firm which compiled the CPM schedule, which, it urges, were ignored by the trial court and which show that the delay encountered in completing the project was attributable to Pathman and those under its control. It must initially be noted that these reports were available for the trial court's examination. Hi-way's arguments tend to ignore the trial testimony and other evidence favorable to Pathman, which the trial court apparently found persuasive and relied upon in formulating the findings which we are now urged to dismiss as clearly erroneous. Upon examination of the entire record, we think the evidence may be fairly summarized as follows: Hi-way delayed in submitting shop drawings and material lists in proper form for GSA approval; Hi-way delayed in beginning installation of header duct; the delay in header duct installation contributed to the need for winterizing the construction site; Hi-way delayed in commencing installation of ceiling light fixtures; and, the entire project was delayed 122 days for which GSA withheld from Pathman liquidated damages of $50,000.

The evidence in this case was voluminous, complicated and technical. It was expertly presented by capable counsel for the respective parties. After reviewing the reports which Hi-way relies upon, we simply cannot

say that these documents support the alleged error which we are asked to find. Many of the trial court's findings represented an evaluation of the credibility of witnesses and the weight to be accorded conflicting evidence. According the trial court the deference which is due the trier of fact, we cannot say that any critical aspect of the trial court's evaluation of the evidence is clearly erroneous.[1] All Hi-way can possibly show is that one or more people or companies contributed to the overall delay in the project work. This fact was amply reflected by the trial court's allocation to Hi-way of only 74 days of the total 122-day delay.

## B.

Hi-way also claims the damages were not substantiated by the evidence presented by Pathman at trial. This evidence related to 13 separate categories of damage as summarized in a detailed document presented to the trial court for demonstrative purposes. Hi-way attacks the evidence as lacking in certainty and for failing to establish a connection between the costs and the delay experienced in completing the project. We do not agree.

The evidence presented by Pathman included business records reflecting the expenditures for the items of damage claimed, and the testimony of Dale Powell, who was the second person in charge in the Pathman company during the time periods involved in the project, and Robert C. Buckman, who had not been employed by Pathman during the construction period but had supervised the compilation of the damage figure. Hi-way presented no legally adequate contradiction to this evidence. Based on all the evidence, we cannot say that the damage award is either unsubstantiated or speculative.

Suffice it to say that Pathman incurred substantial expenses during the period of delay caused by Hi-way and such expenses would not have been incurred had Pathman been able to finish the project on or before the revised completion date. After determining that Hi-way had been responsible for 74 days of the total delay experienced on the project, and holding Hi-way responsible for fewer days of delay than had been alleged by Pathman, the court allocated the damages for the entire delay by holding Hi-way responsible for a fraction of the total figure. This figure is arbitrary only in the sense that it represents the considered judgment of the trial court under the complex totality of the circumstances.

---

[1] The record is insufficient to enable us to review the trial court's refusal to admit into evidence the previous testimony of Louis Wells and John Hert as judicial admissions against Pathman.

## V

■■ Finally, we find no merit in Hi-way's contention that the trial court lacked jurisdiction to set off the judgment awarded to Pathman by the amount of the judgment Hi-way had obtained against Pathman in the United States District Court for the Eastern District of Michigan. Hi-way had registered the Federal judgment in the circuit court of Cook County pursuant to statute. (Ill. Rev. Stat. 1975, ch. 77, pars. 88 through 105.) Execution was stayed in the registration proceeding which was then consolidated with Pathman's pending damage action against Hi-way. The trial court's supplemental order effectuating the set-off satisfies the requirements of the registration statute and is in keeping with the salutory policy of judicial economy. See, *e.g., Employers' Liability Assurance Corp. v. Coronet Insurance Co.* (1969), 106 Ill. App. 2d 24, 245 N.E.2d 629.

For the reasons contained in this opinion the judgment of the trial court is affirmed.

Affirmed.

DIERINGER and ROMITI, JJ., concur.