(No. 11993.—Appellate Court reversed; circuit court affirmed.)

EVERETT SMITH, Plaintiff in Error, *vs.* THE COUNTY OF LOGAN, Defendant in Error.

*Opinion filed June 20, 1918.*

1. CONSTRUCTION—*statutes are construed to ascertain and give effect to the intention of the legislature.* The object of construing a statute is to ascertain and give effect to the intention of the legislature, and in seeking this intention the court will consider the existing circumstances, the necessity for the act and the object to be attained, in connection with the language used in the statute.

2. FEES AND SALARIES—*act of 1912, fixing salaries of State's attorneys, construed.* Under the act of 1912, (Laws of 1911-12, p. 88,) State's attorneys in counties containing not less than 30,000 and not more than 51,000 inhabitants are entitled to an annual salary of $3500 to be paid from the county treasury, in addition to the $400 paid annually from the State treasury.

3. INTEREST—*when a municipal corporation is not chargeable with interest.* Interest cannot be recovered in the absence of an express agreement or a statute authorizing it, and, in the absence of express agreement, a municipal corporation is not chargeable with interest except where money is wrongfully obtained and illegally withheld.

WRIT OF ERROR to the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of Logan county; the Hon. T. M. HARRIS, Judge, presiding.

BEACH & TRAPP, and McCORMICK & MURPHY, for plaintiff in error.

COVEY & WOODS, for defendant in error.

Mr. JUSTICE CARTER delivered the opinion of the court:

This was an action in assumpsit brought in the circuit court of Logan county against said county to recover for salary claimed to be due plaintiff in error as State's attorney of the county. Jury was waived and the cause submitted to the court upon stipulation of facts. The court, after a hearing, entered judgment against the county in the sum of $5250. The case was taken by appeal to the Appellate Court, where the judgment of the circuit court was reversed and a judgment entered in the Appellate Court in favor of plaintiff in error against said county of Logan in the sum of $3650 and costs. The case has been brought here on petition for *certiorari.*

The principal question involved in this case depends upon the construction that should be given to an act fixing the salaries of State's attorneys, in force July 1, 1912, (Laws of 1911-12, p. 88,) and particularly to portions of section 1 and section 3 of said act, which read as follows:

"Sec. 1. That there shall be allowed to the several State's attorneys in this State, hereafter elected, for services to be rendered by them, the following annual salary, to-wit: To each State's attorney in counties not exceeding 30,000 inhabitants, the sum of $100 per each 1000 inhabitants and major fraction thereof, the said salary to be in addition to that now provided by law to be paid by the State: *Provided, however,* that the maximum sum to be paid any State's attorney in any of such counties shall not exceed the sum of $2500 per annum. To each State's attorney in counties containing not less than 30,000 inhabitants and not more than 51,000 inhabitants, the sum of $3500 per annum; to each State's attorney in counties containing not less than

51,000 inhabitants and not more than 100,000 inhabitants, the sum of $5000 per annum in the aggregate, which sum shall include the salary which is to be paid out of the State treasury as now provided by law; to each State's attorney in counties containing not less than 100,000 inhabitants and not more than 250,000 inhabitants, the sum of $6000 per annum; to each State's attorney in counties of more than 250,000 inhabitants, the sum of $10,000 per annum. The population of all counties for the purpose of fixing salaries as herein provided shall be based upon the last Federal census immediately previous to the election of State's attorney in each county."

"Sec. 3. The salaries of State's attorneys, excepting that part which is to be paid out of the State treasury as now provided by law, shall be paid out of the county treasury of the county in which the State's attorney shall reside, in quarterly annual installments on the order of the county board on the treasurer of said county."

The object of construing a statute is to ascertain and give effect to the intention of the legislature. The intention of the law-makers is the law. It is to be gathered from the necessity or reason of the enactment and the meaning of the words, enlarged or restricted according to their real intent. In seeking this intention the court will always have regard to existing circumstances, contemporaneous conditions, the object sought to be attained by the statute and the necessity or want of necessity for its adoption. It must also have in mind the language used by the legislature, the evil to be remedied and the object to be attained. In construing a statute the court will not be confined to its literal meaning. A thing within the intention is regarded within the statute although not within the letter. A thing within the letter is not within the statute if it is not within the intention. When the intention has been thus ascertained from the reading of the statute, words may be modified or altered so as to obviate all inconsistencies with such inten-

tion. (*People* v. *Commissioners of Highways,* 270 Ill. 141; *Hoyne* v. *Danisch,* 264 id. 467; *Warner* v. *King,* 267 id. 82; *People* v. *Bradford,* 267 id. 486.) Rules of construction have lost force and importance in recent years because it is more and more recognized that the paramount duty of the judicial interpreter is to put upon the language of the legislature its plain and rational meaning in order to promote the object thereby sought to be obtained. (Endlich on Int. of Statutes, sec. 329; *Warner* v. *King, supra.*) Such rules should be used to assist in ascertaining the legislative intention and not to obstruct or overthrow such intent.

The office of State's attorney was created in this State by section 22 of article 6 of the constitution of 1870. By the Fees and Salaries act of 1872 it was provided that there should be allowed to all State's attorneys in the State for services rendered by them, fees and salaries as follows: "To each State's attorney the sum of $400," which shall be paid to him quarterly by the State. (Hurd's Stat. 1917, p. 1499.) The same act also provided that he should receive certain enumerated fees for his services as State's attorney. It is clear that under this act it was the plain legislative intention that the State's attorney should obtain his salary from two sources: one a salary from the State of $400, and the other from fees and commissions collected in the prosecution of certain cases. This statute was amended from time to time, and in 1903 an amendment was enacted which contained a proviso for submission to the vote of the people of the county, providing that the State's attorneys in counties of two classes should receive in lieu of fees and commissions a salary to be fixed by the county board. It may be said in this connection that there had been legislation as to the State's attorney of Cook county long before this, fixing his salary at a stated sum, to be paid, in addition to the $400 paid by the State, out of the county treasury of Cook county. The Fees and Salaries act was again amended in 1907. In 1911 the legislature enacted a law

providing specifically for fixing the salaries of State's attorneys and their assistants and repealing all acts in conflict therewith, the third section of which read in part: "Salaries of State's attorneys, excepting that part which is to be paid out of the State treasury as now provided by law, shall be paid out of the county treasury of the county in which the State's attorney shall reside," etc. In 1912 another act was passed, practically a substitution for the act of 1911, which reads on the point here involved substantially as quoted above. In 1913 the State's Attorneys Salaries act was again amended, but no substantial change was made in the act as passed in 1912 so far as it affects the question here under consideration.

Logan county comes within that class of counties containing not less than 30,000 inhabitants nor more than 51,000 inhabitants. In December, 1912, the board of supervisors of that county passed a resolution directing the county clerk to issue orders to the State's attorney "for his salary as fixed by the legislature." Plaintiff in error was elected State's attorney of said county in the fall of 1912, and until September, 1915, received orders for his salary from the county clerk of said county in the sum of $875 quarterly, which is equal to $3500 a year, and in addition thereto received out of the State treasury the sum of $400, drawing a salary of $3900 per annum. At the June meeting of the board of supervisors a resolution was passed reciting the fact that plaintiff in error had drawn $875 quarterly when he was only entitled by law to the sum of $775 quarterly, and that therefore he should only be paid the latter amount quarterly, and also that in case he refused to refund the amount of the excess he had been paid over and above the $775 quarterly, sufficient should be retained out of the sum to become due him until the treasurer had been reimbursed for the excess payments. Plaintiff in error refused to refund any sum he had received from the county and refused to accept any orders for a less sum drawn on

the treasurer of the county from that time on. This action was instituted for the purpose of collecting his salary at the rate of $875 quarterly. The question particularly involved is whether the State's attorneys in counties containing not less than 30,000 and not more than 51,000 inhabitants shall receive $3500 per annum from the county and $400 additional from the State, or whether the $3500 salary was intended by the legislature to include the $400 to be paid by the State.

Counsel for the plaintiff in error argue earnestly and at great length and with positiveness that there is only one reasonable construction of the statute on this question, and that is, that in counties of the class in which Logan county must be placed by its population the State's attorney is entitled to receive $3500 salary from the county and $400 additional from the State; while counsel for defendant in error argue with equal earnestness and just as positively that the statute can only be fairly construed as requiring that the State's attorneys in such counties shall receive a total salary of $3500 a year, the $400 to be paid by the State to be deducted from the amount to be paid by the county, so that the county will only pay each year to the State's attorney $3100. We do not agree with the argument of either counsel that it is absolutely clear that the statute must be construed in accordance with their particular contention. Having in mind the rules of construction heretofore stated and considering all parts of this statute in the light of previous legislation on the subject, we think the construction to be placed upon this statute is not entirely free from doubt. The principal assistance that is given in reaching a conclusion by studying the previous legislation as to salaries and fees of State's attorneys is in showing that the legislature, if it studied the previous legislation in drafting this law, would readily understand what language to use if it was desired to make absolutely clear the question which method should be used in computing the salaries of State's attorneys

in the class in which Logan county is placed by this act. It is clear from a study of previous legislation on this question that it was not only originally intended that the compensation of the State's attorney should be derived from two sources, viz., one the $400 from the State, and the other from the fees and commissions so collected by the State's attorney while in office, (*Cook County* v. *Healy,* 222 Ill. 310,) but it is also just as clear from the recent legislation that the legislature intended the compensation of the State's attorney should continue to come from two sources. To derive a large proportion of the salary of the State's attorney from fees was found most unsatisfactory, and recent legislation on that subject has been largely for the purpose of providing for a fixed salary for the State's attorney in each county, and requiring, as the result of this, the turning over of the fees, fines and emoluments of the office into the county treasury. (*Hoyne* v. *Danisch, supra.*) It is also manifest from this recent legislation that the General Assembly attempted to fix the salaries of the State's attorneys of the different counties so as to be approximately commensurate with the volume of work imposed upon those officers in the respective counties, and that it believed that the volume of the work would depend in a large measure upon the population of each county. For the purpose of arriving at a correct result in this regard the legislature divided the counties of the State into five classes. The first class mentioned in the act here under consideration embraced all counties having not to exceed 30,000 population. According to the stipulation of facts in this case sixty-one out of the 102 counties in the State come in that class. There is, however, a great variation of population in these sixty-one counties, being in some as low as 7000. No fixed amount of salary is provided for this class of counties by this act of the legislature but the amount of salary is dependent upon the population in each county, the State's attorney receiving $100 for each 1000 inhabitants "in addi-

tion to that now provided by law to be paid by the State,"
with the added proviso that the maximum should not ex-
ceed $2500 per annum. In the second class of counties, in
which the defendant in error is found, the act does not spe-
cifically refer to the $400 salary paid by the State and there
are no words used in the act that bear directly on this sub-
ject. The provision as to the third class of counties is, the
"sum of $5000 per annum in the aggregate, which sum shall
include the salary which is to be paid out of the State treas-
ury as now provided by law." The act as to the fourth and
fifth classes of counties does not refer in any way, directly
or indirectly, to the $400 to be paid by the State. The only
county in the fifth class is Cook, and it may be noted in this
connection that the legislature in 1915 passed an act refer-
ring only to the payment of the salary of the State's attor-
ney of Cook county, in which it was provided that in ad-
dition to the salary paid him from the State treasury, the
State's attorney should be paid such further compensation
as would make his salary amount to the sum of $12,000 per
annum. (Hurd's Stat. 1917, p. 1533.) The counties in-
cluded in the third and fourth classes in this State are com-
paratively small in number. According to the stipulation of
facts, the number of counties in the second class is twenty-
four.

Why the legislature, in enacting the statute here being
construed, should have plainly and specifically stated as to
two of these classes that the $400 paid by the State should
be included, and should have omitted any reference to such
$400 payment as applied to the other classes of counties, is
somewhat difficult to explain. Counsel for plaintiff in er-
ror insist that because the legislature plainly stated as to two
classes that the $400 should be included and left out all ref-
erence to the $400 in the other classes, the familiar doctrine
governs that "the expression of one thing is the exclusion
of all others," (*Eldridge* v. *Pierce,* 90 Ill. 474; *City of
Chicago* v. *M. & M. Hotel Co.* 248 id. 264; *Thomas* v.

*West Jersey Railroad Co.* 101 U. S. 71;) and that it neces-
sarily follows that the legislature did not intend to include
the $400 in the salary fixed for the State's attorney as
applied to Logan county. Counsel for defendant in error
argue that in view of the history of the legislation on the
subject of the salaries of State's attorneys in this State
and the reading of section 3 of the act in question, the
legislature must have intended to include in the amount of
the salary of $3500 per annum for the second class of coun-
ties the $400 to be paid by the State. In this connection
they argue that the word "salary," as used in section 3, un-
der any fair rule of construction, must mean the same as
it does in section 1 of the act, and that it is clear that the
word "salary" in section 3 includes not only the amount
received from the county but also the amount received from
the State. We do not agree with counsel for defendant in
error that the word "salary," as used in every instance in
section 1, includes the total salary to be received by the
State's attorney. A portion of the statute with reference
to the salary in the first class of counties provides that
each State's attorney is to receive a certain amount in pro-
portion to the population, "said salary to be in addition to
that now provided by law to be paid by the State." It is
clear that the word "salary" here was not used to include
the amounts paid both by the State and the county.

Counsel for defendant in error further argue that the
statute, in referring to the second and third classes, should
be read together, and that the word "sum" in connection
with the third class should be read "sums," and if so read
it will clearly refer to counties both of the second and of
the third class. Such a construction of the wording of the
act is not a natural one and is contrary to the punctuation
found therein. There is a semicolon between the wording
which refers to the second class of counties and that refer-
ring to the third class of counties immediately following.
The punctuation of a law adopted by the legislature, while

it remains subordinate to the text and is not necessarily controlling in determining the legislative intent, certainly ought not to be totally disregarded, unless on inspection of the whole act it is apparent that it must be, in order to reach the real intent of the legislature. (*Tyrrell* v. *Mayor,* 159 N. Y. 239.) It is obvious from a mere reading of this statute that to disregard this punctuation would be contrary to what seems to be the plain legislative intent.

If we are to give any force to the argument that all parts of the present statute should be taken into consideration as well as the previous legislation on this subject, it will be fair to assume that the legislature would surely give as much attention to the reading of the present statute as it would to the wording and reading of previous legislation on this subject. It would seem to be self-evident that the legislature, in referring specifically to the $400 to be paid by the State as to two classes of counties, must have had in mind the question whether the $400 was to be included or excluded in the total salary to be paid to the State's attorneys in the various classes of counties, and it seems the most reasonable conclusion to hold that the legislature, in including specifically this $400 as a part of the salary in two classes of counties and being silent as to whether or not it should be included in the other three classes of counties, did not intend to have it included in said three classes in which it was not mentioned. This being so, it follows that the judgment of the circuit court on this question was the correct one and that the Appellate Court erred in reversing the judgment of the circuit court in that particular.

Counsel for plaintiff in error also argue that the trial and Appellate Courts both erred in refusing to allow interest against defendant in error for the sum found to be due plaintiff in error, whether the amount was $875 a quarter or $775 a quarter. At common law interest was recoverable only in accordance with an express agreement, and in

this State it is the settled law that it cannot be recovered except when a statute authorizes it. (*Fowler* v. *Harts,* 149 Ill. 592; *Geohegan* v. *Union Elevated Railroad Co.* 266 id. 482.) The only section of our statutes that in any way can be claimed to justify an allowance of interest in a case of this kind is section 2 of chapter 74. That section, after providing what the rate of interest shall be on written instruments or for the use of money loaned or advanced, further allows interest "on money due on the settlement of account from the day of liquidating accounts between the parties and ascertaining the balance; on money received to the use of another and retained without the owner's knowledge; and on money withheld by an unreasonable and vexatious delay of payment." (Hurd's Stat. 1917, p. 1792.) In construing this statute it has been held by this court that a municipal corporation is not chargeable with interest on claims against it, in the absence of express agreement, except where money is wrongfully obtained and illegally withheld by it. (*City of Danville* v. *Danville Water Co.* 180 Ill. 235; *Conway* v. *City of Chicago,* 237 id. 128, and cases cited.) We do not think, under the decisions of this court, that it can be held that this money was illegally withheld in the sense the term is used in the decisions, and it is clear that there was no vexatious or unreasonable delay on the part of defendant in error in refusing to pay the amount claimed by plaintiff in error. This being so, the trial and Appellate Courts both rightfully refused to allow interest on the amount due plaintiff in error.

The judgment of the Appellate Court will be reversed and the judgment of the circuit court will be affirmed.

*Judgment of Appellate Court reversed.*
*Judgment of circuit court affirmed.*