**The People of the State of Illinois, Defendant in Error; v. James Patten, Plaintiff in Error.**

**Gen. No. 33,370.**

8

Opinion filed July 3, 1929. Rehearing denied July 11, 1929.

KIRKLAND, FLEMING, GREEN & MARTIN, for plaintiff in error; WEYMOUTH KIRKLAND, WALTER E. TINSLEY and WILLIAM H. SYMMES, of counsel.

SAMUEL A. ETTELSON, Corporation Counsel and JOHN A. SWANSON, State's Attorney, for defendant in error; MARTIN H. FOSS, Assistant Corporation Counsel and LEE R. LA ROCHELLE, Assistant State's Attorney, of counsel.

MR. PRESIDING JUSTICE BARNES delivered the opinion of the court.

Plaintiff in error was charged by information with operating a motor vehicle on the public highway in the City of Chicago without first procuring a license for the same, in violation of section 9 of the Motor Vehicle Act, Cahill's St. ch. 95a, ¶ 9. He pleaded not guilty and waived trial by jury. On a hearing before the court he was found guilty and sentenced to pay a fine of $10 and also the costs, and in default of payment stand committed to the House of Correction until the fine and costs shall be worked out at the rate of $1.50 a day or until paid.

The facts are not in controversy. All were practically stipulated to. Plaintiff in error operated a motor vehicle, to wit, a "semi-trailer," on the public highways, as charged, without being licensed so to do under the provisions of the Illinois Motor Vehicle Act, and without having applied for and obtained a license so to operate, and without paying a license fee.

The act in question refers to both trailers and semi-trailers. The evidence discloses that a trailer has four wheels and a semi-trailer, two. Neither is self-propelling. Each when put to use is attached to and pulled by a tractor or tractor-truck, a self-propelled vehicle. The semi-trailer is attached to the truck by its frame overlapping the rear of the frame of the tractor-truck on a turntable or so-called fifth wheel.

A trailer salesman testifying for plaintiff in error said that when so attached to the truck "it becomes a six-wheel unit." While this may be true in a practical sense it does not change the fact that a tractor and a semi-trailer are each separate units and considered as such in the Motor Vehicle Act.

The question involved here is whether upon a proper construction of section 9 of the Act a license fee is required for the use of a semi-trailer on public highways.

By section 1 of the Act, Cahill's St. ch. 95a, ¶ 1, the term "motor vehicle" includes "trailers, or semi-trailers pulled or towed by a motor vehicle."

Section 2, Cahill's St. ch. 95a, ¶ 2, divides motor vehicles into two divisions, the second of which is "those vehicles which are designed and used for pulling or carrying freight. . . ."

Section 3, Cahill's St. ch. 95a, ¶ 3, fixes the maximum gross weight to be permitted on the road surface through any vehicle and the number of pounds per inch of width of tire under one wheel.

Paragraph 5 of said section 3 provides that: "Where trailers are used the length of any vehicle, or vehicles, combined with their trailers, shall not exceed 65 feet."

Section 5, Cahill's St. ch. 95a, ¶ 5, provides that "all motor vehicles and all trailers or other vehicles in tow thereof, or thereunto attached, operating upon the improved highways, shall have tires of rubber or some material of equal resiliency," and that defective tires shall not be permitted to be used if so worn or other-

wise damaged as to cause undue vibration or undue concentration of the wheel load on the surface of the road.

Section 9, Cahill's St. ch. 95a, ¶ 9, provides that *"All* vehicles of the second division as described in section 2 of this Act, which are designed or equipped or used *for carrying freight,* goods, wares or merchandise, . . . *shall pay* to the Secretary of State . . . *license fees* for the use of the public highways of this State at the following rates, to-wit:'' Then follow subdivisions (a), (b), (c), (d), (e) fixing fees upon a classification of vehicles according to their gross weight, including the weight of the vehicle and maximum load. Subdivision (f) reads:

''Tractors, traction engines or other similar vehicles used for hauling purposes, except as hereinafter provided shall pay the same fees according to their weight as hereinbefore required in this section of other vehicles. All *trailers and semi-trailers* used with a motor vehicle shall pay to the Secretary of State for each calendar year . . . license fees for the use of the public highways of this State at the following rates, to-wit:

''(a) Trailers having a gross weight of 2,000 pounds, and less including the weight of the trailer and maximum load $6.00.

''(b) Trailers having a gross weight of more than 2,000 pounds, and not more than 10,000 pounds, $25.00.

''(c) Trailers having a gross weight of more than 10,000 pounds, including the weight of the trailer and maximum load $50.00.''

The section then provides for assigning to such trailer as described in the application a distinctive plate number which shall be attached to the rear of the trailer.

The defense is predicated upon the claim that because in said lettered paragraphs (a), (b), (c) of sub-

division (f) the words "and semi-trailers" are not repeated after the word "trailers" it is a case of *casus omissus* in the statute and that the courts must not, by implication, add anything to the section. Special stress is laid upon the principles that the statute on which the prosecution is based being penal in character must be strictly construed; that the language of the statute will not be extended beyond its clear import to include persons not within the scope of its provisions, and that even though it be the intention of the act to include semi-trailers within its provisions it cannot be enforced in the absence of appropriate language to make such an intention effective. Numerous authorities are cited to illustrate these generally accepted principles. But it is unnecessary to refer to authorities outside our own State. In *People v. Fox,* 269 Ill. 300, a case involving the construction of a criminal statute, our Supreme Court said:

"The rule is elementary that the primary object of construing a statute is to ascertain and give effect to the true intent and meaning of the legislature in enacting it; that it is 'the intention of the law-makers that makes the law.' (*Hoyne v. Danish,* 264 Ill. 467.) For the purpose of ascertaining and giving effect to this intention of the law-makers it is proper to consider the occasion and necessity for the law. . . . Where the spirit and intention of the legislature in adopting the act are clearly expressed and its object and purposes are clearly set forth, the courts are not confined to the literal meaning of the words used, when to do so will defeat the obvious legislative intention and result in absurd consequences not contemplated or intended by it. In such cases the literal language of the statute may be departed from, and words may be changed, altered, modified and supplied, or omitted entirely, if necessary to obviate any repugnancy or inconsistency between the language used and the intention of the

legislature as gathered from a consideration of the whole act and the previous condition of legislation upon that subject.''

Applying this rule of construction to the act in question and the particular provisions above set out, it seems clear therefrom that the object and purposes of the act in requiring license fees for the use of the public highways of the State are to regulate the traffic thereon not only with regard to safety but with respect to the character and manner of their use so as to conserve and protect them from the deterioration that would unquestionably result from unregulated usage. That the different provisions in the statute respecting maximum weights of loads, and the character of the tires to be used on vehicles and the requirement for rear lights, and their purpose, apply as well to a semi-trailer as to a trailer or any other vehicle covered by the act is not open to question. That the act includes all vehicles whose use would affect the highways and travel thereon is clearly indicated in its various parts. Section 1 expressly includes ''semi-trailers pulled or towed by a motor vehicle.'' Section 2 includes in the classifications vehicles ''used for carrying freight.'' Section 3 in providing that vehicles combined with their trailers shall not exceed 65 feet manifestly used the word ''trailers'' in the comprehensive sense and ordinary definition of that term. If it did not include semi-trailers as trailers then the use of them at any length would be allowable and tend to defeat the purpose of this provision.

There is no room for doubt that section 9 requires that *all* vehicles used *for carrying freight,* etc., shall pay license fees. Subdivision (f) expressly requires that semi-trailers shall pay license fees at the rates fixed in the following lettered paragraphs (a), (b), (c), according to the weight of the ''trailers.'' The very language and grammatical structure of this provision indicate that the word ''trailers'' in said let-

tered paragraphs following the provision requiring "semi-trailers," as well as trailers, to pay fees "at the following rates" is used to include trailers of all descriptions. This construction is clearly implied as within the intention of the act by section 9 (a), Cahill's St. ch. 95a, ¶ 10, which provides that all vehicles, "trailers and semi-trailers" used for carrying freight, when used for hire operating regularly over fixed or definite routes therein described "shall pay the following *additional* license fees for each 100 pounds gross weight of vehicle and load: (1) For vehicles, trailers and semi-trailers used for carrying freight, and with fixed and definite routes, one ($1.00) dollar." The word "additional" clearly refers to the fees required in the preceding lettered provisions (a), (b), (c) of said subdivision (f) of section 9, thus indicating their application to semi-trailers.

We think it is hardly necessary to dilate further upon the principles governing the construction of statutes as stated in the *Fox* case, *supra,* and followed in numerous decisions in this State. (*Smith v. Logan County,* 284 Ill. 163, 165; *People v. McEldowney,* 308 Ill. 575, 577; *People v. Illinois Merchants' Trust Co.,* 328 Ill. 223, 225.)

The same general principles are stated in Lewis-Sutherland Statutory Construction, vol. 2 (2d Ed.), sec. 520, that notwithstanding the rule that penal laws are to be construed strictly the intention of the lawmaker must govern in the construction of penal as well as other statutes; that "they are not to be construed so strictly as to defeat the obvious intent of the legislature." And in section 521 that "strict construction is to be applied only where the effect is reasonably open to question"; that the rule of strict construction is not violated by allowing "even the more extended of two meanings where such construction better harmonizes with the context." Our statute on construction of statutes also provides that "all general provisions,

terms, phrases and expressions shall be liberally construed in order that the true intent and meaning of the legislature may be fully carried out." (Section 1, ch. 131, Cahill's St.) Upon these principles of construction we can have no doubt that under the agreed state of facts the judgment of conviction should stand.

*Affirmed.*

Scanlan and Gridley, JJ., concur.