CALUMET CONSTRUCTION CORPORATION, Plaintiff-Appellee and Cross-Appellant, v. THE METROPOLITAN SANITARY DISTRICT OF GREATER CHICAGO, Defendant-Appellant and Cross-Appellee.

First District (1st Division)   No. 88—0823

Opinion filed December 30, 1988.

Allen S. Lavin, of Metropolitan Sanitary District, of Chicago (Jack L. Shankman and James B. Murray, of counsel), for appellant.

O'Brien, O'Rourke, Hogan & McNulty, of Chicago (Donald V. O'Brien and Michael Gilman, of counsel), for appellee.

JUSTICE QUINLAN delivered the opinion of the court:

In November 1986, Calumet Construction Corporation (Calumet) sued the Metropolitan Sanitary District of Greater Chicago (MSD) in the circuit court of Cook County for breach of a construction contract between the MSD and Calumet. Calumet sought damages for certain alleged breaches of the contract by the MSD, as well as the return of liquidated damages in the amount of $346,000, which the MSD had withheld from the monies it owed Calumet for delays in Calumet's performance under the contract. Calumet filed a motion for partial summary judgment on the liquidated damages issue, and the trial court held an evidentiary hearing pursuant to the motion. After the hearing, the trial court granted Calumet's motion for summary judgment and ordered a return of the liquidated damages withheld by the MSD, but refused to assess prejudgment interest against the MSD. The MSD appeals the grant of partial summary judgment in favor of Calumet, and Calumet cross-appeals the court's refusal to assess prejudgment interest against the MSD.

In 1983, the MSD advertised for bids on a large public construction contract, No. 77—173—2P, for the construction of sludge digestion tanks, floating tank covers, a service terminal, boilers, a central boiler facility, adjoining control chambers, a gas compressor, the rehabilitation of certain existing equipment, and other related work at the West Southwest Sewage Treatment Plant in Stickney, Illinois. In September 1983, the contract was awarded to Calumet, the lowest bidder, for $22,575,000.

The pertinent provisions of the contract between the MSD and Calumet provided generally that the contract was to be completed in

900 days, with different completion dates set for completion of each of the four phases of the project. The contract provided that time was of the essence and it also provided that if there were delays over which Calumet had no control (*i.e.*, delays caused by the MSD, strikes, fire), the engineer, apparently acting in the capacity of an independent third party, would provide matching day-to-day extensions for Calumet's deadlines. The liquidated damages provision of the contract specifically provided for a liquidated amount of damages of $1,000 for each day past the deadline set for Phase 3 (completion of four sludge digestion tanks) and $1,000 for each day past the deadline set for Phase 4 (completion of the entire project). This appeal concerns the assessment of liquidated damages for the late completion for Phases 3 and 4.

Pursuant to the contract terms, the original deadline set for the completion of Phase 3, the completion of four sludge digestion tanks, was September 18, 1985. Due to certain delays by the MSD, Calumet was granted a day-to-day extension to June 5, 1986. The MSD determined that substantial completion of Phase 3 occurred on January 19, 1987.[1] Based on this determination, the MSD assessed liquidated damages in the amount of $218,000 for the delay from June 5, 1986, to January 19, 1987, and withheld that amount from monies owing to Calumet under the contract.

The original deadline set for completion of Phase 4, completion of the entire project, was March 17, 1986. Due to certain delays by the MSD, Calumet was granted a day-to-day extension to December 18, 1986. The MSD then determined that substantial completion occurred on April 15, 1987, assessed liquidated damages in the amount of $118,000, for the delay from December 18, 1986, to April 15, 1987, and withheld that amount from the monies owing to Calumet under the contract. Thus, the court ultimately found that the MSD actually withheld a total of $346,000 from Calumet's payment as liquidated damages for the alleged late completion of Phases 3 and 4.

As noted above, Calumet filed its $5,500,000 breach of contract claim in November 1986, a portion of which requested the return of the $346,000 that had been withheld as liquidated damages by the MSD. Calumet also, as noted earlier, filed a motion for partial summary judgment on the liquidated damages issue, and at the evidentiary hearing held by the trial court, Calumet presented evidence to show

---

[1]Calumet disputes this date, and claims that beneficial occupancy of all six of the sludge digesters occurred in June 1986 and that all of the digesters had been in continuous operation since that time.

that the MSD contributed to the delays in the completion of the work. The MSD, on the other hand, presented no evidence to contradict Calumet's presentation. Following the presentation of the evidence at the hearing, counsel for Calumet argued that because the MSD contributed to the delays in the work and because fault could not be apportioned under the liquidated damages clause of the contract, the entire amount of liquidated damages, $346,000, should be returned to Calumet. The MSD argued that, pursuant to the terms of the contract, it had granted day-to-day extensions to Calumet for the delays it, the MSD, had caused, that there was a question of fact concerning who was responsible for the additional alleged delays, and that, contrary to Calumet's contention, the liquidated damages clause could be apportioned on the basis of fault under the terms of the contract and was, thus, enforceable.

The trial court, as stated earlier, granted Calumet's motion for partial summary judgment, finding that Calumet had proven that there was mutual delay, and, consequently, under Illinois law the liquidated damages clause was abrogated. The court then suggested that the parties pursue whatever remedies might be available for actual damages. Calumet had, in its claim for the return of the liquidated damages, additionally requested that the court assess prejudgment interest against the MSD. The court, however, found that although the funds had been illegally withheld, they had not been wrongfully obtained, and since both conditions were required under Illinois law, it denied Calumet's request.

Two issues are presented for our consideration on appeal: (1) whether the trial court properly refused to apportion the fault between Calumet and the MSD for the delays under the liquidated damages provision because there had admittedly been mutual delay; and (2) whether the trial court properly denied Calumet's request to assess prejudgment interest against the MSD.

The MSD first argues that the trial court improperly struck the liquidated damages clause on the basis that Illinois law would not permit apportionment of fault under a liquidated damages clause in the event of mutual delay. The MSD contends that this is not the law in Illinois and that, accordingly, the trial court's grant of summary judgment in favor of Calumet on the liquidated damages issue was erroneous. A trial court's grant of summary judgment is proper only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Koukoulomatis v. Disco Wheels, Inc.* (1984), 127 Ill. App. 3d 95, 468 N.E.2d 477.

■ Liquidated damages clauses are essentially artificial damages

agreed to at the time of contracting, and these clauses are enforceable if actual damages are difficult to ascertain and if the liquidated damages provision is a reasonable estimate of the damages which would actually result from a breach of the contract. However, if both of these criteria are not met, then the liquidated damages clause is unenforceable since, in that situation, the provision would actually be a penalty. (*M.I.G. Investments, Inc. v. Marsala* (1981), 92 Ill. App. 3d 400, 405, 414 N.E.2d 1381, 1385.) While liquidated damages provisions have traditionally been subject to a court's scrutiny because of their inherent speculative nature, liquidated damages provisions have been recognized more recently as appropriate in circumstances where the complexity of contractual relationships makes damages difficult to determine, since reasonably related, agreed upon liquidated damages amounts are easy to apply in such situations and satisfy the needs of the parties. See *Aetna Casualty & Surety Co. v. Butte-Meade Sanitary Water District* (D.S.D. 1980), 500 F. Supp. 193; *Structural Sales, Inc. v. Vavras* (1985), 132 Ill. App. 3d 718, 270 N.E.2d 209; *Northern Illinois Gas Co. v. Energy Cooperative, Inc.* (1984), 122 Ill. App. 3d 940, 947, 461 N.E.2d 1049, 1055-56.

■ Specifically, the issue presented on appeal here concerns whether courts can apportion fault for mutual delay between two contracting parties pursuant to a liquidated damages clause. This issue has never been squarely addressed by Illinois courts, and courts of other jurisdictions presented with this issue generally follow either the so-called more "modern rule" of apportionment[2] concerning liquidated damages, or the "older view," which prohibits apportionment under such provisions. (See Sobel, *Owner Delay Damages Chargeable to Performance Bond Surety*, 21 Cal. W.L. Rev. 128, 133-34 (1984).) The older view is that, in construction contracts, if the owner contributed to the delay at all, the owner could not recover any liquidated damages, and the liquidated damages clause would be abrogated in those circumstances. (See *General Insurance Co. v. Commerce Hyatt House* (1970), 5 Cal. App. 3d 460, 85 Cal. Rptr. 317; *State v. Jack B. Parson Construction* (1969), 93 Idaho 118, 456 P.2d 762; *L.A. Reynolds Co. v. State Highway Comm'n* (1967), 271 N.C. 40, 155 S.E.2d 473; *Lee Turzillo Contracting Co. v. Frank Messer &*

---

[2] Although we refer to the rule of apportionment as the "modern rule," we note that in 1923, the United States Supreme Court applied the rule of apportionment under a liquidated damages clause. (*Robinson v. United States* (1923), 261 U.S. 486, 67 L. Ed. 760, 43 S. Ct. 420.) Other courts and commentators, nevertheless, refer to the rule as the "modern rule" because it is only recently that more jurisdictions have begun to apply the rule.

*Sons, Inc.* (1969), 23 Ohio App. 2d 179, 261 N.E.2d 675.) The older rule of nonapportionment, however, is now being abandoned by a growing number of courts in favor of the more modern rule of apportionment because of the increasing popularity of liquidated damages clauses, in part, due to the increasing complexity of contractual relationships and, in part, due to the fact that the older rule is too harsh in its application. (See *E.C. Ernst, Inc. v. Manhattan Construction Co.* (5th Cir. 1977), 551 F.2d 1026, *cert denied sub nom. Providence Hospital v. Manhattan Construction Co.* (1978), 434 U.S. 1067, 55 L. Ed. 2d 769, 98 S. Ct. 1246.) This trend in favor of apportionment is similar in nature to the trend in the courts to apply a comparative negligence standard in tort cases, *i.e.*, recovery is based on apportionment of the responsibility of the parties rather than on the disqualification of a party merely because he was guilty of some fault. (See Sobel, 21 Cal. W.L. Rev. at 133.) Under the modern rule concerning liquidated damages, courts (including the Supreme Court of the United States, as noted) will determine the amount of fault attributable to each party, and, as long as the owner has not delayed in bad faith, they then award liquidated damages according to that finding. *Robinson v. United States* (1923), 261 U.S. 486, 67 L. Ed. 760, 43 S. Ct. 420; *E.C. Ernst, Inc. v. Manhattan Construction Co.* (5th Cir. 1977), 551 F.2d 1026; *United States ex rel. Thorleif Larsen & Son, Inc. v. B.R. Abbot Construction Co.* (7th Cir. 1972), 466 F.2d 712; *Aetna Casualty & Surety Co. v. Butte-Meade Sanitary Water District* (D.S.D. 1980), 500 F. Supp. 193; *Nomellini Construction Co. v. Department of Water Resources, State of California* (1971), 19 Cal. App. 3d 240, 96 Cal. Rptr. 682.

As stated above, this issue has never been squarely addressed in Illinois. The MSD contends that this court should adopt the modern rule of apportionment and enforce the liquidated damages provision accordingly. It argues that the policy behind the rule of apportionment is sound, especially in complex construction contracts such as the one presented here, because in these types of cases there will always be at least some delay, albeit unintentional, attributable to the owner, as here, the MSD. If this court were to adopt the harsh rule of nonapportionment, it argues, the end result would be that liquidated damages clauses would never be enforceable in the large, complex construction contracts for which they were intended, since, as stated, there will always be some unintentional delay attributable to the owner. Thus, the MSD concludes that the trial court should have enforced the liquidated damages clause and applied the modern rule of apportionment.

Calumet, on the other hand, contends that the older rule of non-apportionment is, as the trial court found, the proper rule to be applied in Illinois. Calumet argues that the Illinois case of *Pathman Construction Co. v. Hi-Way Electric Co.* (1978), 65 Ill. App. 3d 480, 382 N.E.2d 453, supports its contention that the existing rule in Illinois is the rule of nonapportionment. It further argues that this rule of nonapportionment is a sound rule because it is too difficult for courts to determine the percentage of delay attributable to each party in a situation such as this, where the work to be performed by the contractor is sequential in nature and affected by many factors, such as weather. Hence, Calumet concludes that the trial court properly applied the rule of nonapportionment, and asserts that, in any event, under the trial court's order, the MSD may still seek actual damages, if they are warranted.

We agree with the MSD that the proper rule to be applied is the modern rule of apportionment.[3] We find the United States Supreme Court case of *Robinson* to be persuasive on this issue and, additionally, find that the so-called modern rule is the better reasoned rule. (See *Robinson*, 261 U.S. 486, 67 L. Ed. 760, 43 S. Ct. 420.) Contrarily, we do not find the *Pathman* case to be either controlling or persuasive. (See *Pathman Construction Co. v. Hi-Way Electric Co.* (1978), 65 Ill. App. 3d 480, 382 N.E.2d 53.) Unlike the issue before the court here, in *Pathman* the court was only presented with the issue of whether to apportion actual damages, and, thus, did not even address the issue of whether liquidated damages could be apportioned. The *Pathman* court found that actual damages could be apportioned between the parties and noted, in *dicta* only, that certain older cases from jurisdictions other than Illinois had followed the rule of nonapportionment under a liquidated damages clause. Consequently, *Pathman* is not controlling authority, and inasmuch as it was not decided upon the specific issue presented to this court, we do not find it to be persuasive authority here either.

Further, we find no merit in Calumet's contention that it is too difficult to apportion fault under a liquidated damages clause. (See *Robinson v. United States* (1923), 261 U.S. 486, 67 L. Ed. 760, 43 S.

---

[3]Calumet has not raised the issue of whether the liquidated damages provision is unenforceable as a penalty, *i.e.*, whether in fact the actual damages were difficult to ascertain and whether the amount of the liquidated damages as set forth in the contract was reasonably related to the damages which would actually result from a breach of the contract. Nonetheless, we note that an examination of the record reveals that the clause at issue here was properly enforceable under the criteria for liquidated damages.

Ct. 420 (where the Supreme Court found no difficulty in apportioning fault under a liquidated damages provision).) A court would have no more difficulty ascertaining proportional fault under a liquidated damages clause than it would in a case of comparative negligence involving actual damages. Hence, we conclude that the older rule of nonapportionment is too harsh and not in accord with current policy in cases concerning a valid liquidated damages clause. We, therefore, hold that the modern rule of apportionment should be applied here.

■ However, while we adopt the modern rule of apportionment, we find that just as the rule should not apply in those situations where the owner has acted in bad faith, the rule also should not apply in situations where the owner, the MSD here, has substantially contributed to the delay, i.e., where the owner has made it practically impossible for the contractor to complete the work as scheduled. This limitation on the rule is necessary because if the evidence shows that the owner substantially contributed to the delay to such an extent, then its delay effectively altered the terms of the contract, and in such a case, the owner's acts must be held to have rendered the clause providing that "time is of the essence" to be void and of no effect.

■ On remand, the parties must, therefore, present evidence to show whether there was mutual delay and to whom the delay was attributable. If the evidence shows that the MSD substantially contributed to the delay so as to render the provision of the contract providing that time is of the essence void, the court must then abrogate the liquidated damages clause, and the parties may only then seek any actual damages that they are able to prove. If, however, the evidence does not show that the MSD substantially contributed to the delay, the court may apportion fault under the clause and award liquidated damages accordingly. Here, since the trial court did not hear such evidence or make such a determination, we must remand the case for a new hearing on Calumet's motion for summary judgment on this particular issue.

■ Although we find that this case must be remanded for a new hearing on the issue of apportionment of liquidated damages in accordance with our conclusions above, we also find it necessary to address the issue raised by Calumet on cross-appeal of whether the trial court properly refused to award it prejudgment interest. This issue needs to be resolved since the trial court may, on remand, again find that the MSD should repay some portion or all of the liquidated damages withheld from Calumet.

Here, Calumet argues that prejudgment interest may be awarded

if the funds are wrongfully obtained or illegally withheld, while the MSD argues that prejudgment interest may be awarded only if the funds are both wrongfully obtained and illegally withheld. We agree with the MSD.

We believe that, in the absence of an express agreement, prejudgment interest may only be awarded against the MSD here where the funds are wrongfully obtained and illegally withheld, and find the analysis of this issue and the interpretation of the Illinois Supreme Court cases on this point by the Seventh Circuit Court of Appeals in *McKee-Berger-Mansueto v. Board of Education of the City of Chicago* (7th Cir. 1980), 626 F.2d 559, 566-67, to be persuasive. (See *Morgan v. City of Rockford* (1940), 375 Ill. 326, 31 N.E.2d 596; *Smith v. County of Logan* (1918), 284 Ill. 163, 119 N.E. 932. See also *City of Springfield v. Allphin* (1980), 82 Ill. 2d 571, 577-78, 413 N.E.2d 394, 396; *Woodruff v. City of Chicago* (1946), 394 Ill. 542, 69 N.E.2d 287.) Here, the trial judge applied the proper rule of law when he held that prejudgment interest could not be awarded against the MSD unless the evidence showed that the funds were both wrongfully obtained and illegally withheld. Furthermore, the trial judge's finding of fact that the money was illegally withheld, but not wrongfully obtained, was adequately supported by the evidence. See *Pietka v. Chelco Corp.* (1982), 107 Ill. App. 3d 544, 437 N.E.2d 872.

For all of the foregoing reasons, the judgment of the circuit court of Cook County is reversed and remanded for a new hearing on Calumet's motion for summary judgment in accordance with this opinion.

Judgment reversed and remanded with directions.

CAMPBELL, P.J., and MANNING, J., concur.