THIRD DIVISION

December 10, 1997

No. 1-96-2684

DON NORTON, GERALD MARLATT, WILLIAM KNACK, RUTH KNACK, JANE REAMES and ALL OTHERS SIMILARLY SITUATED,

Plaintiffs-Appellants,

v.

THE CITY OF CHICAGO, DATACOM SYSTEM CORPORATION and COOK COUNTY,

Defendants-Appellees.

)

)

)

)

)

)

)

)

)

)

)

)

Appeal from the

Circuit Court of

Cook County

No. 88 CH 9011

Honorable

John K. Madden,

Judge Presiding.

JUSTICE CAHILL delivered the opinion of the court:

We review once again a long running dispute between plaintiffs and the lone remaining defendant, Cook County, about the legality of a $3 charge added to delinquent parking tickets in the City of Chicago between 1985 and 1986.

In an earlier appeal, we reviewed the trial court's grant of defendant's motion to dismiss against all defendants: the city, the county, and Datacom System Corporation.  See 
Norton v. City of Chicago
, 267 Ill. App. 3d 507, 642 N.E.2d 839 (1994) (
Norton I
).  We first upheld the dismissal of the city and Datacom.  We then reversed the trial court's ruling that plaintiffs' suit was an impermissible collateral attack, finding that the record was "unclear whether final judgments were ever entered by the traffic court."  
Norton
, 267 Ill. App. 3d at 510.  We held that the county's motion to dismiss under section 2-615 (735 ILCS 5/2-615 (West 1996)) of the Code of Civil Procedure rather than section 2-619 (735 ILCS 5/2-619 (West 1996)) should not have been granted.  The trial court could not conclude, based on pleadings alone, that final judgments had been entered in traffic court.  We held that the trial court erred in finding that the traffic court entered final judgments where the allegations of the county's motion to dismiss failed to establish final judgments.  
Norton
, 267 Ill. App. 3d at 511.

On remand, the parties filed cross-motions for summary judgment.  The trial court granted summary judgment for the county.   The parties raise the following issues on appeal: (1) whether the suit is barred by the collateral attack doctrine; (2) whether the suit is barred by the voluntary payment doctrine; (3) whether the county retained money wrongfully obtained from plaintiffs; and (4) whether plaintiffs are entitled to prejudgment interest.  We reverse and remand.

The affidavits and depositions attached to the motions for summary judgment show that, through 1986, if a city parking ticket defendant did not pay the fine or appear in court after two notices, the ticket was listed by the clerk of the court as delinquent, but no default judgment was entered.  If the ticket was later paid, the county received $3 of the money collected from each delinquent ticket.  Before May, 1985, the $3 was taken from each fine paid to the city.  In 1985, the city hired Datacom System Corporation to send demand notices and collect delinquent fines.  A $3 surcharge was added to the total fine due.  The surcharge was described on the notice as "court costs."  The clerk of the circuit court passed on the money collected from this surcharge to the county.

The notices sent by Datacom read:

"You can obtain additional information about this notice ONLY by writing to the address listed above or by calling (312) 580-3400.

Our records indicate that the parking tickets listed below have not been paid.  IF YOU DO NOT PAY THE TOTAL AMOUNT SHOWN BELOW IMMEDIATELY, THE CITY OF CHICAGO WILL TAKE FURTHER LEGAL ACTION AGAINST YOU.  This may include preparing a verified petition in the Circuit Court of Cook County requesting that a DEFAULT JUDGMENT in the amount of $35 plus court costs be entered against you for each unpaid ticket.

You can avoid this action by mailing a check or money order in the total amount shown below.  *** 
No information will be given or payment accepted at Traffic Court
."  (Emphasis added.)

The demand notices were revised during a law suit (
Horn v. City of Chicago
, 85 C 6838 (N.D. Ill. 1988)) in which the plaintiffs alleged that the demand notices violated their right to due process by failing to give sufficient notice that a hearing was available to contest their liability.  See 
Horn v. City of Chicago
, 860 F.2d 700 (7th Cir. 1988).   The $3 surcharge was relabeled a "statutory mailing fee."  The revised demand notices read:

"You can obtain additional information about this notice ONLY by writing to the address listed, by calling (312) 580-3400, or by visiting the parking ticket information windows in City Hall ***.

***

IF YOU DO NOT PAY THE TOTAL AMOUNT DUE WITHIN 15 DAYS, THE CITY WILL TAKE ACTION TO RECOVER PAYMENT IN A LARGER AMOUNT, AND MAY DEMAND THE MAXIMUM FINE ALLOWED BY LAW."

Plaintiffs here are among those who paid the surcharge in response to the notices.  Plaintiffs allege that Cook County was unjustly enriched by collecting the surcharge.  

We review a trial court's grant of summary judgment 
de
 
novo
.  
Outboard Marine Corp. v. Liberty Mutual Insurance Co.
, 154 Ill. 2d 90, 102, 607 N.E.2d 1204 (1992).  Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.  
Purtill v. Hess
, 111 Ill. 2d 229, 240, 489 N.E.2d 867 (1986).

Plaintiffs first argue that the trial court's ruling that their suit is an impermissible collateral attack on a preexisting judgment is barred by the law of the case.  Plaintiffs argue that in 
Norton I
, we decided, as a matter of law, that judgments were not entered in traffic court.  We disagree.

The rule of the law of the case provides that where an issue has been litigated and decided, a court's unreversed decision on a question of law or fact settles that question for all subsequent stages of the suit.  
McDonald's Corp. v. Vittorio Ricci Chicago, Inc.
, 125 Ill. App. 3d 1083, 1086-87, 466 N.E.2d 1116 (1984).  A question of law decided on appeal is binding on the trial court on remand, and the appellate court if the case is appealed again.  
Martin v. Federal Life Insurance Co.
, 268 Ill. App. 3d 698, 701, 644 N.E.2d 42 (1994).

In 
Norton I
, we held that the trial court could not conclude from the pleadings on the section 2-615 motion to dismiss that final judgments had been entered in traffic court.  The ruling did not resolve the issue or preclude the trial court from reconsidering the question if the county presented evidence of final judgments on a motion for summary judgment.  On remand, the county offered evidence not presented in 
Norton I
.  The county offered deposition testimony explaining how the cases against plaintiffs were disposed of by the clerk of the court.  The county's offer of evidence to show that the traffic court's method of disposing of these cases was "tantamount" to final judgment complied with the directions of this court on remand.

We next address the trial court's finding that final judgments were entered in the underlying cases, precluding collateral attack in this case.

A final judgment can only be attacked by direct appeal or in traditional collateral proceedings defined by statute.  
Malone v. Cosentino
, 99 Ill. 2d 29, 32-33, 457 N.E.2d 395 (1983).  Once a judgment is final, issues that could have been raised are barred in subsequent proceedings.  
Malone
, 99 Ill. 2d at 33.

The county offered proof that after plaintiffs paid fines, their cases were no longer active before the traffic court.  Although no judicial action was taken, the clerk recorded the dispositions of paid tickets in the same way he recorded those disposed of judicially--by removing them from the clerk's "violator file."  The county claims that the clerk's removal of cases from the violator file amounts to a "final judgment for purposes of closing the case."  In support, the county argues that section 27-387(b) of the Municipal Code of Chicago (Code) authorized the clerk to "enter final dispositions on cases where payments were mailed to the [c]lerk."  Section 27-387(b) (1984) provides:

"Upon the filing of such traffic violation complaint in the Municipal Court of Chicago as aforesaid, said complaint may be disposed of only by trial in said court or other official action by a judge of said court, including forfeiture of bail or by payment of a fine to the traffic violations bureau of said court."  Chicago Municipal Code §27-387(b) (repealed July 12, 1990).  

We first note that the language of section 27-387(b) does not support the county's reading.  The Code does not authorize the clerk to enter "final dispositions," but says that complaints for traffic violations may only be disposed of by trial or "other official action by a judge."  Second, even if the clerk's administrative action was authorized, the question of whether that action amounts to a final judgment remains unanswered.  The county cites no case, except 
Stelzik v. City of Chicago
, 85-CH- 7631 (Cir. Ct. Cook Co. January 21, 1986), to support the view that disposing of a case without judicial action amounts to a final judgment.  An unpublished order of a trial court is without precedential value.  
Harvard State Bank v. County of McHenry
, 251 Ill. App. 3d 84, 92, 620 N.E.2d 1360 (1993).

Plaintiffs do not contest the conclusion that payment of the tickets and the surcharge disposed of the cases before the traffic court.  But plaintiffs argue that only a judge can enter a final judgment.  See 
Towns v. Yellow Cab Co.
, 73 Ill. 2d 113, 119, 382 N.E.2d 1217 (1978)(defining "judgment" as "a determination 
by the court
 on the issues presented by the pleadings which ascertains and fixes absolutely and finally the rights of the parties in the lawsuit") (emphasis added).

The only judicial action suggested by the county is an "approval" of the clerk's system by the then chief judge of the circuit court.  The county contends that "the [r]ecord *** establishes that [the chief judge] was aware that the clerk entered final dispositions in parking ticket cases where fines were mailed to the clerk and that the [c]hief [j]udge agreed to this arrangement."  The county's apparent argument is that the court delegated the function of entering final judgments in traffic court to the clerk.  The county contends that the Illinois Constitution, supreme court rules, and the rules of the circuit court of Cook County empower the chief judge to do this.   Article VI, section 7(c), of the Illinois Constitution grants the chief judge general administrative authority over his court.  Ill. Const. 1970, art. VI, §7(c).  Supreme Court Rule 272 provides that "[i]f no *** written judgment is to be filed, the judge or clerk shall forthwith make a notation of judgment and enter the judgment of record promptly."  137 Ill. 2d R. 272.  Rule 0.3 of the rules of the circuit court of Cook County provides:

"(a) Forms of entries.  The Chief Judge shall superintend the keeping of the records of the Circuit Court of Cook County and prescribe abbreviated forms of entries therein of the proceedings, orders and judgments of said court, which abbreviated forms so prescribed shall have the same force and effect as if said proceedings, orders and judgments were entered in full on the records of said court in the forms heretofore customary in courts of record of this state."  Cook Co. Cir. Ct. R. 0.3(a) (eff. October 2, 1995).

As plaintiffs note, section 7(c) of the constitution and Rule 0.3 do not address whether the chief judge may empower the clerk of the court to enter judgments without participation of a judge.  

A system that disposes of parking violations by an administrator may be proper if delegated by an appropriate statute or ordinance.  See 
Gardner v. City of Columbus
, 841 F.2d 1272 (6th Cir. 1988)(upholding an administrative procedure established pursuant to a statute to dispose of parking violations).  But the part of the record the county relies on to support that such a delegation took place here shows that a deputy clerk of the Municipal Court of Chicago believed that the clerk of the circuit court, the chief judge of the court, and the mayor of the City of Chicago entered into an oral agreement in 1964 to add a $3 charge to delinquent parking tickets to cover costs incurred by the clerk for collection of payments.  Even if we consider this hearsay statement, it fails to support the county's assertion that final judgments were somehow created by the "agreement" or that the clerk's administrative disposal of plaintiffs' cases was "tantamount" to final judgments for purposes of the collateral attack doctrine.  

Even if we entertain a broad reading of section 27-387(b) of the Municipal Code--that "payment of a fine to the traffic violations bureau of said court" complies with Supreme Court Rule 272 and circuit court Rule 0.3(a), to create a judgment--that is not what happened here.  No payments were made to the "traffic violations bureau" of the court and no authority existed to deviate from the procedures set out in section 27-387(b).

The county next argues that the trial court's judgment may be affirmed on several other grounds.  We may affirm a trial court's ruling on any grounds supported by the record.  
Gonzalez v. Kennedy Mobil Service, Inc.
, 274 Ill. App. 3d 1077, 1083, 654 N.E.2d 624 (1995).

The county argues that summary judgment should be affirmed because the plaintiffs voluntarily paid the $3 charge.  The voluntary payment doctrine provides that a payor may not recover fees voluntarily paid, without protest, even if the fees were illegal.  
Getto v. City of Chicago
, 86 Ill. 2d 39, 48-49, 426 N.E.2d 844 (1981); 
Terra-Nova Investments v. Rosewell
, 235 Ill. App. 3d 330, 337, 601 N.E. 2d 1109 (1992).  But a payment is not voluntary if (1) the payor lacked knowledge of facts upon which to protest payment, or (2) the payment was made under duress.  
Terra-Nova
, 235 Ill. App. 3d at 337.

The voluntary payment doctrine does not apply when payment is "made under duress or compulsion."  See 
Getto
, 86 Ill. 2d at 51; 
Geary v. Dominick's Finer Foods, Inc.
, 129 Ill. 2d 389, 395, 544 N.E.2d 344 (1989).  Under the doctrine, a payment is made "under duress" when the payee "exert[s] some actual or threatened power over the payor from which the payor has no immediate relief except by paying."  
Terra-Nova Investments
, 235 Ill. App. 3d at 337.

The demand notices sent to plaintiffs here threatened "further legal action," a "default judgment in the amount of $35 plus court costs," to "take action to recover payment in a larger amount," or to "demand the maximum fine allowed by law."  The Datacom mailing directed the delinquent not to contact the traffic court, where the delinquent parking tickets remained pending.  While threatening to obtain a default judgment, the authors of the original demand notice state flatly, "No information will be given or payment accepted at Traffic Court."  The county offers no legal foundation or statutory authority for this unique restriction on a defendant in a pending case.  The county does not suggest what authority existed to allow the authors of the demand notice to imply that the traffic court shut itself off from communication with a traffic court defendant, refuse to accept payments, or refuse to allow a defendant or his attorney to file an appearance in a pending case.  The demand notice, in effect, suggests that the defendant's access to the court system has been blocked by an intervening administrative procedure established after suit was filed.  We have found nothing in Illinois law that would allow a government to issue such notice and deny a defendant access to the courts.

The wording of these demand notices urged recipients to pay the fines in lieu of steeper penalties or court action.  But the wording misrepresented the rights then available to delinquents in their pending cases.  No authority existed to announce that "no information will be given or accepted at Traffic Court."

We are aware that in 
Horn v. City of Chicago
, 860 F.2d 700 (7th Cir. 1988), the Seventh Circuit Court of Appeals ruled on the constitutionality of the revised notices in the context of a Section 1983 (42 U.S.C. §1983 (1988)) action in which the plaintiffs claimed that the wording of the unrevised notice deprived them of due process without adequate notice of a hearing.  The plaintiffs argued that the demand notices misleadingly implied that judgments had already been entered against them in traffic court.  
Horn
, 860 F.2d at 702.  Reversing the trial court, the seventh circuit found that the notices did not "[imply] that judgment had already been entered against plaintiffs" and were "reasonably certain to inform those affected" that they could contest the amounts demanded.  
Horn
, 860 F.2d at 705.  

We agree with the seventh circuit that the notices did not imply that judgments had been entered.  But the seventh circuit's analysis is not applicable here.  The issue before the seventh circuit did not require the court to address whether the notices discouraged use of the judicial process or coerced payment.  We analyze the demand notices to decide a different issue: whether the notices were coercive enough to render plaintiffs' payment involuntary.  We believe they were.

The county next argues that it is entitled to judgment as a matter of law because plaintiffs, in their unjust enrichment claim, presented no evidence that the county engaged in wrongful conduct.  

The county notes that unjust enrichment is "a condition that may be brought about by unlawful or improper conduct *** and may be redressed by a cause of action based upon that improper conduct."  
McKay v. Kusper
, 252 Ill. App. 3d 450, 463, 624 N.E.2d 1140 (1993).  The county argues that they did not collect the $3 charge and cannot be vicariously liable for the alleged wrongful conduct of the clerk of the circuit court.  

The wrongful conduct rule is not absolute.  Plaintiffs do not argue that the county is vicariously liable for the clerk's actions, but rely on a "constructive trust" theory.  Whether the clerk of the circuit court is the county's agent is not relevant.  Nor is wrongful conduct on the part of the county necessary to impose a constructive trust.  See 
Frederickson v. Blumenthal
, 271 Ill. App. 3d 738, 740, 648 N.E.2d 1060 (1995) (recognizing that courts have broadened application of constructive trusts beyond those where defendant's conduct was wrongful).

Where a defendant has obtained money to which he is not entitled, under such circumstances that "in equity and good conscience he ought not retain it," the rightful owners of the money can claim it through a constructive trust to avoid unjust enrichment.  
Selmaville County Consolidated School District No. 10
 v. Salem Elementary School District No. 111
, 96 Ill. App. 3d 1062, 1066, 421 N.E.2d 1087 (1981).  That the person receiving the money acted in good faith does not prevent recovery of the sum paid.  
Selmaville
, 96 Ill. App. 3d at 1066; 
Board of Education v. Holt
, 41 Ill. App. 3d 625, 626, 354 N.E.2d 534 (1976).

The county next argues that it did not retain the $3 charge.  Although the county concedes that the money was deposited with the county treasurer, the county maintains that the money was held in trust for the purpose of the operation, maintenance and benefit of the circuit court.

Where money is placed in the hands of a person to be delivered to another, a resulting trust arises in favor of the latter.  
In re Estate of Habel
, 88 Ill. App. 2d 194, 202, 231 N.E.2d 616 (1967).  The county argues that such a resulting trust arose when the money from the surcharges was deposited with the county treasurer because the funds were earmarked for the benefit of the circuit court.  Article I, section 12, of the Illinois Constitution requires that litigants' circuit court fees only be used to support the operation and maintenance of the circuit court.  See 
Crocker v. Finley
, 99 Ill. 2d 444, 454, 459 N.E.2d 1346 (1984).  The county points out that plaintiffs offered no evidence to rebut the presumption that the county used the money for anything other than its constitutionally mandated purposes.  See 
CBS, Inc. v. Partee
, 198 Ill. App. 3d 936, 948, 556 N.E.2d 648 (1990) (public officials are presumed to act in accordance with the law).  So, the county argues, the county did not retain the $3 charge, but used it to partially discharge the county's funding responsibility to the circuit court.   

While making this argument, the county does not dispute that the surcharges were falsely labeled "court costs" and "statutory mailing fees."  Court costs could not be recovered without a conviction.  Ill. Rev. Stat. 1985, ch. 25, par. 27.2(16)("The Circuit Court Clerk shall be entitled to costs in all criminal and quasi-criminal cases from each person convicted therein").  Plaintiffs here were not convicted.  Since the evidence shows that the fees charged were never authorized court costs, we cannot conclude the money received was lawfully held in trust for the circuit court.  The money may have been used to partially pay the county's obligation to financially support the circuit court, but that use does not negate the fact that the county benefitted to the extent that the illegal fees freed up other monies the county would have used to fund the court.

Plaintiffs claim that if summary judgment for the county is set aside, they are entitled to judgment as a matter of law on their motion for summary judgment.  If there is no dispute as to any material fact, and the undisputed facts support only one inference, the only question is the legal effect of the facts, and summary judgment should be granted.  
Cnota v. Palatine Area Football Ass'n.
, 227 Ill. App. 3d 640, 647, 592 N.E.2d 196 (1992).  Plaintiffs assert that the evidence presented at summary judgment showed that the surcharge was unauthorized and that the county retained the benefit of these unauthorized fees.  We agree.

The evidence establishes that the surcharges were not legally imposed "court costs" or "mailing fees."  The record shows that named plaintiffs Don Norton and Jane Reames paid these surcharges based on a mistake of fact induced by misrepresentation of the $3 surcharge.  The parties do not dispute that the money collected from this surcharge was given to the county.  We remand with directions to enter summary judgment for plaintiffs Norton and Reames.  

The record reveals that the trial court deferred ruling on plaintiffs' motion for class certification.  We express no opinion on the issue.  The trial court is directed to conduct a hearing on class certification under sections 2-801 and 2-802 of the Code of Civil Procedure (735 ILCS 5/2-801, 2-802 (West 1996)).

We next address plaintiffs' argument that they are entitled to prejudgment interest.  Generally, prejudgment interest "is not recoverable absent a statute or agreement providing for it."  
City of Springfield v. Allphin
, 82 Ill. 2d 571, 413 N.E.2d 394 (1980).  But plaintiffs argue that prejudgment interest is recoverable without statutory authorization "where a municipal corporation wrongfully exacts money and holds that money without just right or claim."  
City of Chicago v. Northwestern Mutual Life Insurance Co.
, 218 Ill. 40, 44, 75 N.E. 803 (1905).  See also 
City of Springfield
, 82 Ill. 2d at 577-78.  Plaintiffs argue that this exception should apply to the county as well.  

In 
City of Chicago
, our supreme court did not elaborate on the standard for deciding when prejudgment interest, not authorized by statute or agreement, is appropriate.  But in 
City of Springfield
, the court found that, even absent statutory authority, a court may award interest "where warranted by equitable considerations," but not where "such an award would not comport with justice and equity."  
City of Springfield
, 82 Ill. 2d at 579.  In reliance on 
City of Springfield
 and other Illinois cases, we have held that prejudgment interest not statutorily or contractually authorized may only be awarded against a defendant who wrongfully obtained and illegally withheld funds from a plaintiff.  
Calumet Construction Corp. v. Metropolitan Sanitary District of Greater Chicago
, 178 Ill. App. 3d 415, 423, 533 N.E.2d 453 (1988).  At issue here is the $3 penalty exacted for each ticket.  In 
Norton I
 we held that the city and its agent were properly dismissed from the suit--the city because plaintiffs did not allege the city received or retained money from the $3 penalty, Datacom because the allegations of the complaint were insufficient to establish that Datacom received or retained any part of the $3 penalty.  Yet because of the city's wrongful action, the county now holds the money.  The issue is whether the party who innocently receives money wrongfully obtained by another should pay prejudgment interest.  We believe prejudgment interest in this case would not meet the justice and equity standard expressed in 
City of Springfield
.

Reversed and remanded.

LEAVITT, P.J., and GORDON J., concur.